UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE MCCORMICK & ASSOCIATES, INC., a Michigan corporation

      Plaintiff

      vs.

LAKESHORE ENGINEERING SERVICES, INC., a Michigan corporation; KWAME KILPATRICK, an Individual; BERNARD KILPATRICK, an Individual; VICTOR M. MERCADO, an Individual; DERRICK A. MILLER, an Individual; BOBBY W. FERGUSON, an Individual; FERGUSON'S ENTERPRISES, INC., a Michigan corporation; INLAND WATERS POLLUTION CONTROL, INC., a Michigan corporation; ANTHONY SOAVE, an Individual; LAKESHORE TOLTEST, a Michigan corporation; LAKESHORE TOLTEST, a Delaware corporation; TOLTEST CORPORATION, an Ohio corporation; THOMAS HARDIMAN, an Individual, AVINASH RACHMALE, an Individual, XCEL CONSTRUCTION SERVICES, INC., a Michigan corporation, DETROIT CONTRACTING, INC., a Michigan Corporation; MAHA KASIM, an Individual; NAFA KHALIF, an Individual; DETROIT PROGRAM MANAGEMENT JV TEAM, a Michigan Limited Liability Company;  A & H CONTRATORS, INC., a Michigan corporation, INLAND/XCEL LLC, a Michigan Limited Liability Company and, the CITY OF DETROIT and its DETROIT WATER AND SEWERAGE DEPARTMENT, a Municipal Corporation in the State of Michigan,   Jointly and Severally

      Defendants

Case No:
Hon.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

ROBERT G. LAHIFF     (P36726)
MICHAEL J. LIDDANE (P38639)
FOSTER, MEADOWS & BALLARD, P.C.
Attorneys for Plaintiff
607 Shelby – 7th Floor
Detroit, MI 48226
313-961-3234 - 313-961-6184 (Fax)
rlahiff@fostermeadows.com
mliddane@fostermeadows.com

## COMPLAINT OF WILLIE MCCORMICK & ASSOCIATES, INC.

## DEMAND FOR JURY TRIAL

NOW COMES the  Plaintiff, WILLIE MCCORMICK & ASSOCIATES, INC., a Michigan corporation, (hereinafter McCormick), by and through its undersigned counsel, and for its Complaint against the Defendants, Kwame M. Kilpatrick, Bernard Kilpatrick, Victor M. Mercado, Derrick A. Miller, Anthony Soave, Bobby W. Ferguson, Ferguson's Enterprises, Inc., Inland Waters Pollution Control, Inc., Inland/Xcel, LLC, a Michigan Limited Liability Company, Lakeshore Engineering Services, Inc., a Michigan corporation; Lakeshore TolTest, a Michigan corporation, Toltest Corporation, an Ohio corporation, Lakeshore TolTest, a Delaware corporation, Avinash Rachmale, Thomas Hardiman,   Xcel Construction Services, Inc., a Michigan corporation, Maha Kasim, Nafa Khalif, Detroit Contracting, Inc., a Michigan corporation, A & H Contractors, Inc., a Michigan Corporation and Detroit Program Management JV Team, LLC., a Michigan Limited Liability Company,  and the City of Detroit through  its Detroit Water and Sewerage Department, states as follows:

## NATURE OF THE CASE

1.     This case arises from a     secret scheme by the Defendants to exchange bribes, kickbacks and other gratuities in return for the award of Detroit Water and Sewerage Department (DWSD) underground water and sewer line contracts and subcontracts, to enrich themselves and their co-conspirators through the receipt of illegal revenue and profits derived from the scheme.    Through collusion, bid rigging and contract manipulation the City of Detroit Defendants,  Kwame Kilpatrick, Victor Mercado and Derek Miller, steered the award of DWSD water and sewer line contracts and subcontracts to conspiring co-defendant contractors, Anthony Soave and his company Inland Waters, Avinash Rachmale and Thomas Hardiman and their

companies Lakeshore and A & H Contractors, Inc., Bobby Ferguson and his companies Ferguson Enterprises and Xcel, and Maha Kasim, Nafa Khalif and their company Detroit Contracting, Inc. In return for steering contracts to the Contractor Defendants, the Contractor Defendants brought a Ferguson controlled company into the DWSD project and paid money and other gratuities to Bobby Ferguson and his companies, Kwame Kilpatrick and other members of the Kilpatrick inner circle, either directly or indirectly.

2.      One result of funneling DWSD work to the Contractor Defendants and Ferguson Defendants was to monopolize and restrain competition in the marketplace for DWSD underground water and sewer line contracts and subcontracts.  This deprived other underground water and sewer contractors, like McCormick, from a legitimate opportunity to compete for and receive DWSD underground water and sewer work, which McCormick would have received but for the illegal scheme.   The Plaintiff, Willie McCormick & Associates, Inc. suffered harm to its business and property as a result of this scheme.

3.      The Defendants fraudulently concealed their illegal scheme.   They effectively concealed their scheme from officials in the City of Detroit, the State of Michigan, the Federal Judiciary, State and Federal law enforcement, as well as McCormick.   As alleged in the First Superseding Indictment (See, "Federal Prosecution" section below), the Defendants utilized perjury, witness tampering, obstruction of justice and other means to conceal their illegal scheme. The Defendants' scheme remained concealed until federal law enforcement officials obtained wire taps, text messages, empaneled a grand jury and offered immunity to witnesses to come forward. The grand jury released its First Superseding Indictment on December 15, 2010, which was the first time the secret scheme was revealed.

4.      McCormick asserts three categories of  federal claims: (1) McCormick's business was damaged due to violation of McCormick's right to Equal Protection under the law

when it was deprived of the same opportunity and benefits as the Ferguson Defendants   to compete for and receive DWSD underground water and sewer line work.  This claim is brought pursuant to the  Equal Protection Clause of Fourteenth Amendment to the U.S. Constitution and 42 USC §1983; and 42 USC §1981, for denial of equal benefits under the law;  (2) McCormick's business was damaged by the Defendants' violation of  the U.S. Antitrust Statutes, the Sherman and Clayton Acts, 15 USC  § 1 et. seq., through their secret scheme which resulted in monopolizing and  restraining competition in the relevant marketplace for DWSD water and sewer line contracts and subcontracts, directly harming McCormick's business as it lost substantial DWSD water and sewer line contract and subcontract work because of this unlawful restraint on competition; and,   (3) McCormick's business was damaged by the Defendants' violation of  RICO, 18 USC 1862(c) and (d), through their secret scheme which they carried out through their pattern of unlawful racketeering.

## **JURISDICTION AND VENUE**

5.     The Plaintiff McCormick, for all pertinent times herein, is a Michigan corporation, with its principal place of business located in the City of Detroit, County of Wayne.

6.     Defendant, Kwame Kilpatrick *(*Kwame Kilpatrick*)*, is an individual currently residing in the State of Texas.  For all pertinent times herein, he was a resident of the State of Michigan, and Mayor of the City of Detroit and resident of the City of Detroit, County of Wayne. He is being sued both in his individual capacity and for his acts in his official capacity as Mayor of the City of Detroit, as more specifically detailed below.

7.     Defendant, Bernard Kilpatrick, is an individual and resides in Wayne County, Michigan.

8.     Defendant, Victor M. Mercado (Mercado), is an individual currently residing in the State of Florida.  For all pertinent times herein, he was a resident of the State of

Michigan. He is being sued in his individual capacity and for his acts in his official capacity as Director of the Detroit Water and Sewerage Department, as more specifically detailed below.

9.      Defendant, Derrick A. Miller (Miller), is an individual currently residing in the State of Virginia.  For all pertinent times herein, he was a resident of the State of Michigan. He is being sued in his individual capacity and for his acts in his official capacity as an employee of the City of Detroit, as more specifically detailed below.

10.      Defendant, Bobby W. Ferguson (Ferguson), is an individual.  For all pertinent times herein, he has been a resident of the State of Michigan.

11.      Defendant, Avinash Rachmale, is a resident of the State of Michigan.

12.      Defendant, Thomas Hardiman, is a resident of the State of Michigan.

13.      Defendant, Maha Kasim,   is a resident of the State of Michigan.

14.      Defendant, Nafa Khalif, is a resident of the State of Michigan.

15.      Defendant, Ferguson's Enterprises, Inc. (FEI), is a Michigan corporation owned and controlled by Defendant Ferguson.  Its principal place of business has been in Wayne County, Michigan.  For all pertinent times herein, it has conducted business in the State of Michigan.

16.      Defendant, Xcel Construction Services, Inc., (Xcel) is a Michigan corporation owned and controlled by Defendant Ferguson.  Its principal place of business has been in Wayne County, Michigan.

17.      Defendant, Inland Waters Pollution Control, Inc. (Inland Waters) is a Michigan corporation with its principal place of business in Wayne County, Michigan.

18.      Defendant, Inland/Xcel, LLC (Inland/Xcel) is a Michigan Limited Liability Company and/or Joint Venture, with its principal place of business in Wayne County, Michigan.

19.     Defendant, Anthony Soave (Soave), is an individual, who for all pertinent times herein conducted business in the State of Michigan and the County of Wayne.

20.     Defendant, Detroit Contracting, Inc., (DCI) is a Michigan corporation, which conducted business in Wayne County.

21.     Defendant, Lakeshore Engineering Services, Inc. (Lakeshore) is a Michigan corporation, with its principal place of business in Wayne County, Michigan.   It appears that for all pertinent times herein Lakeshore Engineering was the party in interest in all DWSD contracts at issue.   Lakeshore Engineering Services, through the direction of its owner, officer and director, co-defendant, Avinash Rachmale, engaged in various changes to its corporate structure and business, by acquiring companies, exchanging stock and forming new entities.  The following entities have been acquired, formed or exchanged stock with Lakeshore: Lakeshore TolTest Corporation, a Michigan corporation; Lakeshore TolTest Corporation, a Delaware Corporation; TolTest Inc., an Ohio corporation; and, Lakeshore Engineering Services, Inc., a Michigan corporation. Through a series of mergers/stock exchanges and other transfers of interest there may be a new successor entity to Lakeshore Engineering.   Discovery will reveal exactly which entity(s) is the resulting or successor entity responsible for the acts and misconduct of Lakeshore Engineering. Hereinafter all entities will be collectively referred to as Lakeshore.

22.     Defendant, A & H Contractors, Inc. is a Michigan corporation, which conducted business in Wayne County.

23.     Defendant, Detroit Program Management JV Team, LLC, is a Michigan Limited Liability Company, which conducted business in Wayne County and was composed of DCI and Xcel.

24.     Defendant, City of Detroit through its Department of Water and Sewerage is a Municipal corporation in the State of Michigan located in Wayne County, Michigan.

## JURISDICTION

25.     This Court has federal question subject matter jurisdiction over the Plaintiff's claims under 28 USC §1331, under the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC §1961, et. seq., under the Federal Antitrust Statutes, (Sherman Act and Clayton Act) 15 USC §sec 1 et. seq., this Court also has jurisdiction under 28 USC §1337 and §15 USC 15(a) and (26); and, for the claim relative to denial of Plaintiff's rights to Equal Protection Under the Law under the 14th Amendment to the U.S. Constitution and violations under 42 USC 1981 and 1983, this Court has jurisdiction pursuant to 28 USC §1343.

26.     This Court has personal jurisdiction over the individual Defendants pursuant to MCLA 600.701.  Each of the individual Defendants either reside in the State of Michigan or have consented to jurisdiction in the State of Michigan.  Further, the conduct giving rise to the Complaint was conduct performed by the individual Defendants and on behalf of the business entity Defendants, all of which occurred in the State of Michigan, were performed in the State of Michigan, and had consequences and damages forming therefrom in the State of Michigan, such that this Court has personal jurisdiction pursuant to MCLA 600.715.

27.     In addition, the business entity and municipal Defendants are all Michigan entities, formed in the State of Michigan either as corporations or limited liability companies, except for the Lakeshore acquisitions or formations of Delaware and Ohio corporations.  For all pertinent times relevant to this matter, these entities conducted business in the State of Michigan. The actions for which they are being charged in this Complaint were for conduct performed by their agents or employees in the State of Michigan.  This Court has personal jurisdiction over these entities pursuant to MCLA 600.711.

## VENUE

28.     Venue is proper here pursuant to 18 USC §1391(b)(2) and 18 USC §1965, because:

a.      The majority of events and actions giving rise to the claims herein occurred within this district;

b.      Improvements to the real property and sewer system at issue in many of the claims herein are situated in this district;

c.      With respect to the claims brought herein, the majority of the acts and wrongdoings of the Defendants occurred in this district.

## GENERAL ALLEGATIONS
## THE PARTIES

**WILLIE MCCORMICK & ASSOCIATES, INC.**

29.     McCormick was incorporated in the State of Michigan in 1992. McCormick has continuously operated as a Detroit Based, Minority Owned underground water and sewer contractor inside the City of Detroit from 1992 to the present.  It performs dig ups, installations and replacements of water lines, sewer lines and all of the incidental work associated with those activities.  McCormick performs underground water and sewer line work almost exclusively for one customer – The City of Detroit, Water and Sewerage Department.  Its near exclusive source of business and income is received from the award of underground water and sewer line contracts and subcontracts from City of Detroit, Detroit Water and Sewerage Department projects.

**BOBBY W. FERGUSON/FERGUSON'S ENTERPRISES, INC.**
**XCEL CONSTRUCTION SERVICES, INC.**

30.     Ferguson Enterprises, Inc. was a Detroit Based and Minority Owned business for all pertinent times herein owned and controlled by Defendant, Bobby Ferguson.

Bobby Ferguson is a long time personal friend of Kwame Kilpatrick. Bobby Ferguson also owned and controlled and Xcel Construction Services.

**INLAND WATERS POLLUTION CONTROL, INC.**

31.     Inland Waters is primarily in the business of construction management and pipe relining work throughout the State of Michigan and other states. Inland Waters was initially owned by Anthony Soave.  He sold his interest in whole or in part to IPR in about 2006.    Inland Pipe Rehabilitation (IPR) is a Texas based holding company, which directly and through its subsidiaries and wholly owned entities, performs underground and pipe relining work throughout the entire United States.

32.     After Inland Waters (and its predecessor in interest) began business in the City of Detroit in the 1990's, it frequently and regularly utilized McCormick as its underground water and sewer line subcontractor on DWSD contracts.

33.     McCormick successfully performed its obligations as a subcontractor on numerous Inland subcontracts throughout their relationship.

34.     McCormick was regarded by Inland Waters as a qualified, underground contractor who provided reliable and high quality work on its subcontracts with Inland Waters, and thus, was frequently chosen as Inland Water's underground contractor of choice for City of Detroit DWSD projects.

**ANTHONY SOAVE**

35.     Anthony Soave was an owner, officer and director of, and principally controlled Inland Waters for all times pertinent herein.  The activities, acts and omissions of Inland Waters in furtherance of the secret scheme in this matter occurred only with the knowledge and participation of Soave.  He also provided bribes, kickbacks and other gratuities independent of Inland as a means to influence and receive DWSD work for his business, Inland Waters.

**INLAND/XCEL LLC**

36.     Inland/Xcel LLC was formed as a joint venture between Defendant Ferguson and Defendant Inland Waters in November, 2006.

**LAKESHORE ENGINEERING SERVICES, INC.**

37.     Lakeshore is a Michigan corporation formed in May, 1994.   It has been in the business of construction and construction management services throughout the State of Michigan, and conducted businesses in interstate commerce and internationally, and, performs construction projects for the United States Government throughout the world.

**A & H CONTRACTORS, INC.**

38.     Lakeshore principals and officers are the incorporators and owners of A & H.  They utilized A & H as an underground subcontractor to Lakeshore in various contracts, and Lakeshore required other water and sewer line contractors such as McCormick to go through A & H to perform subcontract work on Lakeshore projects.

**AVINASH RACHMALE**

39.     Avinash Rachmale, is an owner, officer, director and member of Lakeshore and A& H.  He directed or was involved in the decision to participate and participated in all of the activities of these companies relevant to the secret scheme and conspiracy set forth herein.

**THOMAS HARDIMAN**

40.     Thomas Hardiman, was an officer, director and member of Lakeshore and A& H.  He directed or was involved in the decision to participate and participated in all of the activities of these companies relevant to the secret scheme and conspiracy set forth herein.

**MAHA KASIM**

41.     Maha Kasim is an owner, officer, director and member of Detroit Contracting, Inc.  Maha Kasim directed or participated in all of the activities of DCI relevant to the secret scheme and conspiracy set forth herein.

**NAFA KHALIF**

42.     Nafa Khalif is a Michigan resident and an owner, officer, director and member of Detroit Contracting, Inc.  Nafa Khalif directed or participated in all of the activities of DCI relevant to the secret scheme and conspiracy set forth herein.

**DETROIT CONTRACTING, INC (DCI) and DETROIT PROGRAM MANAGEMENT JV TEAM, LLC.**

43.     DCI was a general contractor which formed a joint venture with Bobby Ferguson's company, Xcel:  Detroit Program Management JV Team, LLC, bid on and received the award of underground water and sewer line work from DWSD.

**KWAME KILPATRICK**

44.     Defendant Kilpatrick was Mayor of the City of Detroit between the years 2002 and 2008.  He was also appointed Special Administrator of all operations of DWSD by Judge Feikens of the Federal District Court for the Eastern District of Michigan, Southern Division.  This appointment began almost immediately upon Kilpatrick taking office and ran through approximately 2006.

**BERNARD KILPATRICK**

45.     Defendant Bernard Kilpatrick is the father of Defendant Kwame Kilpatrick. He held himself and his company out as a consultant for hire, for those persons and businesses who wished to do business with the City of Detroit.

**VICTOR MERCADO**

46.     Mercado was appointed as Director of DWSD by Kwame Kilpatrick. Mercado oversaw all DWSD operations including contract awards, amendments, change orders, approval of payment invoices and contract site inspection and reporting.

**DERRICK A. MILLER**

47.     Miller worked in the City of Detroit in various capacities under the direction of Kwame Kilpatrick.

48.     Whenever in this Complaint reference is made to any act, deed, omission or transaction of any corporation, joint venture, or limited liability company, the allegation means that the entity engaged in the act, deed, omission or transaction by or through its owners, officers, directors, agents, employees (Soave, Rachmale, Hardiman, Kasim Khalif, Ferguson and others), elected officials or representatives while they were actively engaged in the management, direction, control or discharge of the entities' business or official affairs.

**THE CITY OF DETROIT**

49.     The City of Detroit through its Department of Water and Sewerage, for all pertinent times herein operated, maintained and entered into contracts for the operation of its Water and Sewer system which serves millions of customers in the greater Detroit metropolitan area.  Throughout this Complaint the City of Detroit and its Department of Water and Sewerage will be collectively referred to as, the City of Detroit, or, the  Detroit Water and Sewerage Department, or, DWSD.  For all allegations applicable to the  City of Detroit, the City acted through its duly elected and appointed officials and employees,  acting in their official capacity, under color of law, including but not limited to Defendants, Kwame Kilpatrick, Victor Mercado and Derek Miller, as well as others not yet identified.

## BEFORE THE KILPATRICK ADMINISTRATION
### 1992 -2002

50.     Through the first 10 years (1992-2002) of its business operation, McCormick successfully bid against other underground contractors for two types of underground water and sewer line work with the City of Detroit.   It successfully bid for the award of DWSD underground sewer and water line contracts directly to McCormick as the primary contractor.  It also successfully competed for and was selected as an underground water and sewer line subcontractor on contracts awarded by DWSD to others as the primary contractor.

51.     McCormick was routinely selected by Defendant, Inland Waters, as its Detroit Based and Minority Owned underground water and sewer line subcontractor on DWSD contracts Inland Waters was awarded from the City of Detroit.

52.      The City of Detroit ordinances and rules required bidders who wished to use subcontractors, to identify those proposed subcontractors as part of their bid and to receive approval of those subcontractors in conjunction with the bid approval and prior to any subcontractor performing work on the project.  In those projects where a bidder wished to hire McCormick as a an underground water and sewer line subcontractor, McCormick was identified and proposed as a water and sewer line subcontractor in the prime bidder's proposal.  In those cases McCormick was regularly approved through the bidding review and approval process, by the DWSD staff, by the Detroit Water and Sewerage Board and by the City Council.

53.     When the DWSD released a request for competitive bids for underground water and sewer projects, McCormick also bid against other underground contractors for those contracts.

54. McCormick was a reliable and respected underground water and sewer line contractor in the City of Detroit, receiving awards of direct contracts with the City of Detroit, and, receiving subcontracts with others who had direct contracts with the City of Detroit.

## THE KILPATRICK ADMINISTRATION
### 2002-2008

55. Defendant Kwame Kilpatrick was elected Mayor of the City of Detroit in November, 2001.

56. Kilpatrick's term as Mayor began on January 2, 2002. He left office in 2008.

57. When Kilpatrick became Mayor, an environmental lawsuit was pending in the United States District Court for the Eastern District of Michigan, entitled United States v. City of Detroit, Detroit Water & Sewerage Department, and State of Michigan, Eastern District of Michigan, Southern Division, Case No: 77-71100. The lawsuit concerned the City of Detroit and the DWSD's compliance with provisions of the Clean Water Act, 33 USC §1251 et. seq. (City of Detroit environmental case).

58. On December 3, 2001, the federal district court entered its Order entitled "Order Continuing Special Administrator for the Detroit Water and Sewerage Department." In this Order, the federal district court for the Eastern District of Michigan, Southern Division, appointed Kwame Kilpatrick as the federal court Special Administrator of DWSD effective as of January 1, 2002. This Order, as did the prior Orders, granted Kwame Kilpatrick authority over all of the departments of the City of Detroit, including the City Council, to administer all contracting and procurement operations of the Detroit Water & Sewerage Department. The order vested Kwame Kilpatrick with the authority to carry out the operations of the City of Detroit Department

of Water and Sewerage without restriction or limitation of the City Charter, Ordinance and regulations with regard to the operations (including contract awards) of the DWSD.

59.     The authority of the Mayor's office of the City of Detroit, granted by City charter and ordinance, when coupled with the absolute powers conferred upon Kilpatrick by the federal district court's Order of December 3, 2001, created a unique situation with respect to the award of water and sewer line contracts from the City of Detroit and the Detroit Water and Sewerage Department. Now, a single individual (Kwame Kilpatrick) became the sole voice of official policy and practice for the City of Detroit and the Detroit Water and Sewerage Department.  He had absolute authority to approve, deny and amend DWSD contracts.  Oversight, administration and payment of DWSD projects were performed by Mercado and Miller, at the direction of Kwame Kilpatrick.

60.     In early 2002, Kilpatrick appointed Miller as Chief Administrative Officer and Miller became involved in the bidding and awarding of DWSD contracts.

61.     In June, 2002, Kilpatrick appointed Mercado as Director of the DWSD.

62.     Over the course of the next six years, 2002-2008, the Defendants carried out their secret scheme to exchange bribes, kickbacks and other gratuities in return for the award of DWSD underground water and sewer line contracts and subcontracts.

63.     In approximately 2008, Mayor Kwame Kilpatrick resigned as Mayor of the City of Detroit for misconduct in office.  In close proximity to this event, the Defendant Bobby Ferguson and his companies were then removed or barred by the City of Detroit and DWSD from further activity with DWSD underground water and sewer line contracts and subcontracts.

## FEDERAL PROSECUTION EXPOSES SECRET SCHEME

## DECEMBER 15, 2010

64.     Many of the factual allegations raised in this Complaint arise out of information first unveiled in the course of the criminal proceeding in the United States District Court, Eastern District of Michigan, Southern Division, Criminal Case No: CR-10-20403-NGE, *United States of America v. Kwame Kilpatrick, Bobby Ferguson, Bernard Kilpatrick and Victor Mercado.* (Federal Prosecution).

65.     On December 15, 2010, a Grand Jury returned a First Superseding Indictment in the Federal Prosecution.  That Indictment alleged a criminal RICO conspiracy, bribery, extortion, obstruction of justice, mail fraud, wire fraud, and money laundering in relation to various DWSD projects.   Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that a number of projects referenced in the First Superseding Indictment are the projects and contracts referenced in this Complaint and as will be more fully revealed after further investigation or discovery.

66.     This indictment revealed for the first time the secret scheme among the Defendants to exchange bribes, kickbacks and other gratuities in return for the award of DWSD contracts and subcontracts.

67.     The First Superseding Indictment through the Fourth Superseding Indictment is incorporated by reference herein.

68.     Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that the Federal Prosecution encompasses most of the contracts, persons, companies and issues alleged in this Complaint.  By way of example, the Federal Prosecution includes the following allegations which appear to have commonality with persons, projects and conduct in this case:

16

a. Criminal charges were brought in the Federal Prosecution against some of the same persons named as Defendants in this case, including: Kwame Kilpatrick, Bernard Kilpatrick, Derek Miller, Victor Mercado and Bobby Ferguson.

b. The Federal Prosecution appears to involve many of the same DWSD contracts at issue in this civil case, possibly including CS-1368, CM-2014 and CM-2015, among others.

c. The Federal Prosecution appears to include events and contracts which involve almost all of the same contractors and persons involved in this case as Defendants, such as Inland Waters, Anthony Soave, Bobby Ferguson, Ferguson Enterprises, Inc. Xcel Construction Services, Inc. Inland/Xcel, LLC, Lakeshore Engineering, A & H Contractors, Inc., Avinash Rachmale, Thomas Hardiman and perhaps others.

d. Much of the Federal Prosecution appears to involve the very same operative facts as the claims in this matter.

69. The First Superseding Indictment and now the testimony in the Federal Prosecution are revealing for the first time the secret scheme among the Defendants, as well as the various methods used to conceal the scheme. Some of those revelations concerning the scheme and its concealment include but are not limited to the following:

a. That the "Kilpatrick Enterprise" consisting of Kwame Kilpatrick, Bernard Kilpatrick, Derek Miller, Bobby Ferguson and Victor Mercado, constituted a RICO enterprise under 18 USC §1961(4) to commit bribery, extortion and fraud to enrich themselves and others.

b. They concealed and protected the activities of the enterprise from detection by law enforcement officers and the federal judiciary, as well as from exposure by the City Council and the news media, through means that included, among other things, perjury, witness tampering and obstruction of justice.

c. That the Kilpatrick Enterprise engaged in activities from 2000 through 2009, knowingly and intentionally conspiring to violate 18 USC §1962(c), by conducting and participating directly and indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity

17

involving bribery, extortion, mail fraud, wire fraud and obstruction of justice.

d.     The indictment went on to describe the means and methods of their Racketeering Activity, as follows.

e.     The Enterprise coerced contractors to include Ferguson in their contracts with DWSD and/or rigged the award of DWSD contracts to ensure that Ferguson received proceeds from those contracts.  As a result Ferguson received tens of millions of dollars from these contracts and shared a portion of these proceeds with other members of the Enterprise.

f.     As alleged in the First Superseding Indictment, the secret scheme often operated outside of the formal DWSD bidding and award process to remain hidden from discovery.  The enterprise conspirators held private/secret meetings with contractors under consideration for award of DWSD contracts to convince them to utilize a Ferguson company as part of the DWSD project and to pay bribes and other gratuities in exchange for the award of the contract.

g.     In other situations, as alleged in the First Superseding Indictment, the enterprise would simply not issue final approval to move forward with a DWSD water and sewer line contract or amendment, holding it up until the contractor in question agreed to participate in the secret scheme and award a Ferguson company the underground water and sewer line subcontract.

h.     In one case cited in the First Superseding Indictment, there were secret meetings between the Enterprise and Contractor "I" and Contractor "I's Partner" about the award and amendments of a DWSD sewer lining contract.  These secret negotiations required Contractor "I" and its "Partner" to pay bribes and remove Contractor "I's" approved minority subcontractor and replace it with a Ferguson company as the minority owned water and sewer line subcontractor. Contractor "I" and its "Partner" agreed to the terms, replaced Contractor "I's" minority owned subcontractor, paid bribes, and, Contractor "I" was awarded the contract and subsequent amendments.  (This appears to be Inland Waters and its owner, Anthony Soave, replacing McCormick on CS-1368 with Ferguson Enterprises).

i.     In some instances, as alleged in the First Superseding Indictment and trial testimony, the conspiring contractors

concealed their payment of bribes and kickbacks by invoicing the City of Detroit under the applicable DWSD contracts for payments it made to Ferguson on the project, when Ferguson in fact had not performed the work.

j.     The First Superseding Indictment further alleged that in a number of cases, Ferguson was either a silent partner with the successful bidder, or, utilized proxy companies to act as the purported underground subcontractor on the contractor's bid, with the conspiring bidder being fully aware that a Ferguson company would ultimately be given the DWSD underground water and sewer line work on the projects even though Ferguson's involvement with the bidder in the project was concealed at the time of bidding.

k.     The Indictment outlines many other examples of the practices designed to conceal the secret scheme, which will be further detailed in the course of this matter.

70.     In the course of the Federal Prosecution, Derek Miller reached a plea agreement with the government, which provided further insight into the secret scheme of the Defendants and how they concealed this scheme.  As part of that plea deal Derek Miller has admitted that, he steered millions of dollars of City of Detroit business to Ferguson controlled companies, at the direction of Kwame Kilpatrick.  According to the plea deal, Miller admitted that Mercado and Miller pressured contractors to partner with Ferguson controlled companies or hire Ferguson controlled companies as a subcontractor.  Miller further admitted that he, Mercado and other City employees manipulated the award of DWSD projects to contractors who teamed with Ferguson entities by re-evaluating or fixing bids if a Ferguson team was not the proposed winning bidder.

71.     In addition to the First Superseding Indictment publicizing the existence of the secret conspiracy among the Defendants for the first time, the Federal Prosecution trial has begun prior to the filing of this complaint.   Testimony so far has provided some further insight into the allegations in the Indictment as to the mechanics of the secret scheme and how the

Defendants concealed the scheme.  For example, Lakeshore principals would draw funds from other companies they controlled to pay Ferguson bribes and kickbacks so as to not alert their own employees and raise inquiries as to why Ferguson was being paid for work it was not doing.  In other instances, Lakeshore and its principals would have bribes and kickbacks paid by check in the name of other companies owned by Ferguson relatives, to conceal the payment to Ferguson.  In other instances, Lakeshore principals would make bribery payments to Ferguson in cash to avoid detection.  Ultimately, the funds made their way to Ferguson or a Ferguson controlled company. Ferguson would then funnel a portion of the funds to Kwame Kilpatrick and others.

72.     Further trial testimony in the Federal Prosecution case confirms allegations in the Indictment that the Defendants conspired to conceal Ferguson's involvement on DWSD water and sewer line projects when submitting bids, when in fact a Ferguson controlled company would ultimately be the partner or subcontractor once the DWSD water and sewer line contracts were awarded.

73.     On November 5, 2012, Victor Mercado entered into a Plea Agreement in the Federal Prosecution.  In part, Mercado stated:

> During the period from June 2002 to June 2008, MERCADO served as Director of the Detroit Water & Sewerage Department (DWSD). In this capacity, MERCADO was responsible for administering over $2 billion in contracts with private companies. During this time, MERCADO reported to the Mayor of Detroit, Kwame M. Kilpatrick. From January 2002 to January 2006, Kilpatrick served as Special Administrator over the DWSD. That designation, arising from a federal consent decree resolving a lawsuit alleging federal environmental violations, gave Kilpatrick authority to award DWSD contracts directly with outside parties, bypassing city procurement procedures, and also gave Kilpatrick responsibility over the operation of DWSD's wastewater treatment plant to ensure compliance with environmental standards.
>
> Kilpatrick used his position as Mayor of Detroit and Special Administrator of DWSD to pressure city contractors-who submitted proposals to or were awarded contracts by DWSD-to give

subcontracts or payments obtained under those contracts to Bobby W. Ferguson, or risk having the contracts delayed, awarded to competitors, or canceled, resulting in economic harm. Invoking and otherwise exploiting his well-known affiliation with former Mayor Kilpatrick, Ferguson pressured city contractors to hire or pay him for DWSD contracts. Both DWSD and the contractors who were pressured did business in interstate commerce. The extortionate actions impacted interstate commerce.

MERCADO-at the direction of Kilpatrick and his associates-took steps to help Ferguson receive a large portion of contracts, subcontracts or payments for DWSD business. These steps included influencing the procurement process to Ferguson's advantage, as well as directing a bidder to include Ferguson on a DWSD contract in order to receive favorable consideration on the bid. MERCADO took these steps as a result of regular and consistent pressure from former Mayor Kilpatrick and his staff to help Ferguson obtain DWSD business regardless of procurement policies, rules and regulations. MERCADO tried to avoid this pressure, but from time to time he influenced the process to Ferguson's benefit in order to pacify and placate the former Mayor.

74. The trial of the Federal Prosecution continues at the time of filing this complaint. With respect to the foregoing, the Plaintiff attaches as Exhibit A – First Superseding Indictment. Exhibit B – Miller Plea Agreement and, Exhibit C – Mercado Plea Agreement.

**THREE GROUPS IN THE SECRET SCHEME**

75. As alleged in the Federal Prosecution and revealed during the pending trial and plea agreements, the Defendants entered into a secret scheme to exchange bribes, kickbacks and other gratuities in return for the award of DWSD contracts and subcontracts. The scheme involved three distinct groups of Defendants each playing a different role. Each defendant had to agree to participate in in its role in order for the secret scheme to work and remain concealed.

a. **The City of Detroit Defendants** include: Kwame Kilpatrick as Mayor of the City of Detroit, a member of his administration, Derek Miller, and Director of DWSD, Victor Mercado. These Defendants and others in the City of Detroit and DWSD controlled the process of awarding underground water and sewer line contracts, approval of

subcontractors, the oversight and inspection of work performed on contracts, the review and approval of invoices for work performed and the review and approval of contract amendments, change orders and other contract price increases. Through their positions of authority and control over the award and administration of DWSD underground water and sewer line contracts they were able to rig the contract bid process, steer the award of contracts to those contractors who agreed to participate in their schemes of bribery and corruption, restrict or eliminate inspectors and oversight at work sites, and, approve contract increases, change orders and contract amendments to further the conspiracy. The City of Detroit Defendants would approach Contractor Defendants and engage in covert negotiations to solicit and obtain the payment of bribes and kickbacks to Ferguson and the Kilpatrick Defendants, and, require the Contractor Defendants to hire a Ferguson company in return for the award of DWSD contracts and subcontracts.

b. **The Ferguson Defendants** include: Bobby Ferguson, Ferguson Enterprises, Inc., Xcel, LLC, Detroit Management Program JV Team, LLC, Inland/Xcel, LLC, and other "proxy" companies acting at Ferguson's direction. Bobby Ferguson was a close personal friend of Kwame Kilpatrick. Bobby Ferguson and his companies were the underground water and sewer line contractors, who would receive underground water and sewer line contracts or subcontracts from the Contractor Defendants who joined the secret scheme. Ferguson and City of Detroit Defendants would approach Contractor Defendants and engage in covert negotiations to solicit and obtain the payment of bribes and kickbacks to Ferguson and the Kilpatrick Defendants, and, require the Contractor Defendants to hire a Ferguson company. In return the Contractor Defendants would receive award of the primary contract, have little or no oversight of work performed by the Contractor Defendants or their subs, receive awards of additional contracts and contract increases and regular approval of invoicing through the collusion of the City of Detroit Defendants.

c. **The Contractor Defendants** include: Anthony Soave and his company, Inland Waters Pollution Control, Inc., Maha Kasim, Nafa Khalif and their company, Detroit Contracting, Inc., Inland/Xcel, LLC, Detroit Program Management JV Team, LLC; and, Avinash Rachmale and Thomas Hardiman and their companies Lakeshore and A & H Contractors, Inc. The Contractor Defendants agreed to participate in the secret

conspiracy after being solicited by one of more of the Ferguson or City of Detroit Defendants.  They agreed to pay bribes and other gratuities to or for the benefit of Ferguson and the Kilpatrick Defendants and their families and partner with or hire a Ferguson Defendant as an underground water and sewer line subcontractor if awarded a primary DWSD contract. In return, the Contractor Defendants or their companies received the award of primary contracts, were able to run projects with little or no supervision by the City of Detroit or DWSD, would submit invoices and receive payment for work not performed, submitted invoices and receive payment in excess of amounts agreed to in the DWSD contracts, and were allowed to receive change orders, amendments and contract increase without competitive bidding, scrutiny or reasonable review and evaluation, all through the intervention of the City of Detroit Defendants who were overseeing and administering the contracts.

## THE KILPATRICK ENTERPRISE/CONSPIRACY

76.     At all pertinent times herein, and in particular with respect to the civil RICO claim brought herein, each of the following Defendants are a person within the meaning of 18 USC §1961(3):

> Former Mayor Kwame Kilpatrick
> Bernard Kilpatrick
> Bobby W. Ferguson
> Victor M. Mercado
> Derrick A. Miller
> Anthony Soave
> Inland Waters Pollution Control, Inc.
> Ferguson's Enterprises, Inc.
> Inland/Excel, LLC
> Avinash Rachmale
> Thomas Hardiman
> Lakeshore
> Xcel Construction Services, Inc.
> Maha Kasim
> Nafa Khalif
> Detroit Contracting, Inc.
> Detroit Program Management JV Team, LLC

77. The foregoing persons and entities were a group of individuals and operated as an association-in-fact enterprise as defined by 18 USC §1961(4). This enterprise is referred to as the Kilpatrick Enterprise, both generally for the purpose of this Complaint as well specifically with respect to the RICO claims in this matter.

78. This enterprise, as well as other participants that may be unknown at this time, or may be determined in the course of reasonable investigation and discovery in this matter, participated together for the purpose of financially enriching themselves, their families, friends, and associates in connection with contracts and services performed for the DWSD.

<u>**INTERSTATE COMMERCE**</u>

79. The Kilpatrick Enterprise collectively and through its individual members, engaged in conduct which substantially effected and involved interstate commerce. This occurred in one or more of the following ways and instances:

a.  The Kilpatrick Enterprise and/or its members controlled all contracting and procurement operations of the City of Detroit, DWSD.

b.  The City of Detroit received federal assistance in excess of $10,000.00 during each calendar year at issue in this case, being the years 2002-2008, and, engaged in interstate commerce with entities and individuals from different states.

c.  During this time period, the City of Detroit Defendants in the Kilpatrick Enterprise and/or its individual members controlled contract and procurement operations of the City of Detroit, DWSD, such that the City contracted with and purchased goods and services from companies engaged in interstate commerce.

d.  Members of the Kilpatrick Enterprise, including Defendant Kwame Kilpatrick, traveled and purchased services in the course of interstate commerce, in jurisdictions outside the State of Michigan.

e.  Defendant Inland Waters conducts business in interstate commerce in different state jurisdictions within the United

States, including the purchasing of goods and services in interstate commerce utilized in the performance of work on DWSD contracts. Also, Defendant, Tony Soave, sold a portion or all of his ownership interest in Inland Waters to Inland Pipe Rehabilitation (IPR) in about 2006. IPR is a Texas based holding company doing business throughout the United States.

f.      The Kilpatrick Enterprise and/or its members utilized interstate wires to transmit funds, to send and receive billing and payment related documents, and for other communications.

g.      Lakeshore conducts business in interstate and international commerce and performs contract work for the United States of America, including the purchasing of goods and services in interstate commerce utilized in the performance of work on DWSD contracts.

h.      Detroit Contracting, Inc. conducts business in interstate commerce, including the purchasing of goods and services in interstate commerce utilized in the performance of work on DWSD contracts.

i.      Additional instances of activities and conduct affecting and involving interstate commerce, as will be more fully outlined in the course of reasonable discovery.

### THE KNOWN CONTRACTS AT ISSUE
### DWSD CONRTRACT CS-1368

80.    Based on reasonable inferences from the allegations contained in the First Superseding Indictment and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that the secret scheme involved DWSD contract CS-1368 which was a sewer line inspection, lining and rehabilitation contract awarded to Inland Waters. At the outset of this project Inland Waters was owned in whole or in part by Anthony Soave (the "Partner"). Plaintiff believes reasonable discovery will further reveal that McCormick was the Detroit Based Minority Owned underground

water and sewer line subcontractor which Inland and Soave agreed to replace in favor of Ferguson, causing Ferguson to receive sewer work and revenue totaling more than $24.7 million.

81.     Prior to November, 2001, DWSD solicited bids for Contract CS-1368. One of the responding parties was Inland Waters.

82.     Inland Waters in its bid for CS-1368 proposed for DWSD approval, subcontractors who were to work on the projects. These included: C. J. Williams & Associates, Superior Engineering Associates, Inc., McCormick & Associates, Inc., LD&S, and Superior Construction and Management, LLC. McCormick was the only underground water and sewer line subcontractor who was both a Detroit Based and Minority Business Enterprise.

83.     In November, 2001, the DWSD Board approved Inland Waters to receive contract CS-1368 and contract CS-1362. Each of the contracts was in the amount of approximately $25 Million Dollars.

84.     In Approximately December, 2001, the DWSD Board approved the consolidation of the two contracts into a single contract, referenced as Contract CS-1368.

85.     The total amount of these combined contracts was approximately $50 Million Dollars.

86.     In approving the award of Contract CS-1368 to Inland Waters, the DWSD Board specifically approved the subcontractors who were to work with Inland Waters on CS-1368: C. J. Williams & Associates, Superior Engineering Associates, Inc., McCormick & Associates, Inc., LD&S, and Superior Construction and Management, LLC.

87.     Contract CS-1368 encompassed sewer inspection, lining and rehabilitation services for sewers within the City of Detroit. CS-1362 pertained to smaller-diameter pipes and CS-1368 pertained to larger-diameter pipes.

88.     McCormick and LD&S would be the underground water and sewer line subcontractors associated with this project.

89.     This Contract followed the long standing practice of Inland Waters selecting McCormick as its Detroit-Based Minority-Owned underground water and sewer line subcontractor on its City of Detroit projects.

90.     Prior to and at the time of the award of Contract CS-1368 by the DWSD Water Board, no Ferguson entity had been proposed or approved as an underground subcontractor on the project.

91.     In November, 2001, Kwame Kilpatrick was elected Mayor of the City of Detroit.

92.     As alleged in the First Superseding Indictment in the Federal Prosecution, acting in his official capacity as Mayor of Detroit, utilizing his authority under the Charter of the City of Detroit, as well as his authority as the Special Administrator appointed by the Federal District Court, and in furtherance of the secret scheme, Kilpatrick refused to approve and/or held up the process of moving forward with Contract CS-1368, because a Ferguson company  was not one of the approved underground water and sewer subcontractors on CS-1368.  Various City of Detroit Defendants communicated this to Inland representatives during secret meetings with Inland representatives.

93.      As alleged in the First Superseding Indictment in the Federal Prosecution, in furtherance of the secret scheme, Kwame Kilpatrick, including Bernard Kilpatrick, Derrick Miller, Victor Mercado and others engaged in secret meetings with Soave and other Inland Waters representatives, wherein Inland Waters and the City of Detroit Defendants agreed that Kilpatrick would approve CS-1368 and allow it to progress forward, and in return Soave and Inland Waters agreed to:

    a.      Remove McCormick from the project and in its place bring in Ferguson Enterprises, Inc. as the Detroit Based Minority Owned underground water and sewer line subcontractor;

    b.      Pay bribes and provide other gratuities to Ferguson and/or Kilpatrick.

94.     As alleged in the First Superseding Indictment in the Federal Prosecution, in early 2002, Miller, Chief Administrator Officer of the City, secretly contacted Inland Waters and instructed Inland Waters to meet with Ferguson and give Ferguson and/or FEI underground water and sewer line work equal to 5% of the lining contract.

95.     As alleged in the First Superseding Indictment in the Federal Prosecution, in or about April, 2002, at a private meeting, Kwame Kilpatrick told a representative of Inland Waters that if Inland wanted Kilpatrick to release the CS-1368 lining contract, then FEI needed to be substituted for McCormick.

96.     As alleged in the First Superseding Indictment in the Federal Prosecution, in about May, 2002, Ferguson met secretly with an Inland Waters representative and demanded that Inland Waters pay him $1.5 Million Dollars, to receive the award of CS-1368.

97.     As testified to by Soave during the Federal Prosecution trial, Soave requested a meeting with and personally met with Mayor Kwame Kilpatrick who told him he had the wrong minority contractor on the project and that a Ferguson company needed to be the minority underground water and sewer line subcontractor.

98.     As alleged in the First Superseding Indictment in the Federal Prosecution, on or about June 1, 2002, Miller asked a representative of Inland Waters if Inland Waters had reached an agreement with Ferguson relative to CS-1368.

99.     As alleged in the First Superseding Indictment in the Federal Prosecution, in or about June, 2002, FEI entered into a secret agreement with Inland Waters wherein FEI would

get at least $10 Million Dollars' worth of work on the lining contract, with an assured minimum profit of about $1.5 Million Dollars.

100.     As alleged in the First Superseding Indictment in the Federal Prosecution, Soave and Inland Waters removed the "minority subcontractor" (McCormick) from CS-1368 and subcontracted work on CS-1368 to FEI, and, paid bribes and kickbacks to and for the benefit of Ferguson and the Kilpatrick Defendants

101.     As alleged in the First Superseding Indictment in the Federal Prosecution, upon Soave and Inland Waters removing McCormick and bringing in FEI into CS-1368, Kilpatrick exercised his authority in his official capacity as Mayor of the City of Detroit and as Special Administrator, and released CS-1368 to Inland Waters.

102.     In furtherance of this scheme, Inland Waters did not assign tasks to McCormick from CS-1368 and substituted Defendant, Ferguson's Enterprises (FEI) in for McCormick.  Inland assigned tasks to FEI under CS-1368.

103.     In violation of City ordinance and contracting rules and requirements, Inland and Soave did not inform DWSD of their desire to have FEI provide services as a water and sewer line subcontractor on CS-1368, and as such, Inland and Soave did not receive DWSD approval to have FEI perform services as a subcontractor on CS-1368.

104.     Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that Inland Waters and Soave concealed from  the DWSD Board, the City Council and the public  the secret agreement with co-Defendants to remove McCormick from the project and replace it with FEI in CS-1368.  Further, discovery will likely reveal that Soave and Inland Waters concealed from the DWSD Board and the public in general its payment of bribes, kickbacks and other gratuities to and for the benefit of Ferguson and City of Detroit Defendants.

105.    As alleged in the First Superseding Indictment in the Federal Prosecution, as the work on CS-1368 continued, from time to time other underground water and sewer line work arose over a number of years which was completely unrelated to the original scope of CS-1368. However, the City of Detroit Defendants did not put out for bid the new unrelated work.

106.    As alleged in the First Superseding Indictment in the Federal Prosecution, this new unrelated work was simply added onto the original contract (CS-1368) without competitive bid, by a series of amendments over a number of years – keeping all the same parties in place to monopolize the work. Adding work by amendments without competitive bidding was in furtherance of the secret scheme and effectively continued to shut out other underground contractors, including McCormick, from the opportunity to compete for and participate in this additional underground work. In total there were five additional amendments to CS-1368.

107.    As alleged in the First Superseding Indictment of the Federal Prosecution, between the years 2004-2007, to receive continued preferential treatment from the City of Detroit in the award of contracts, contract amendments , and increases, Inland Waters, Soave and other Soave controlled companies also provided the use of private jets and other gratuities and gifts for the benefit of Kwame Kilpatrick and his friends, family, and associates, including Defendants Bernard Kilpatrick and Bobby Ferguson.

108.    As alleged in the First Superseding Indictment of the Federal Prosecution, there were at least 16 flights to destinations including Washington, D.C., Orlando, Florida, East Hamptons, Boston, Houston, Cleveland, Greensborough, North Carolina, Bermuda, Tallahassee, Florida and Naples, Florida. It is estimated that the fair market value of these flights is approximately $260,000.00 or more. Yet, Inland Waters and Soave provided these flights to Kwame Kilpatrick and others for free, as bribes and unlawful gratuities, to assure continued preferential treatment in DWSD contracts and procurement matters.

109. As alleged in the First Superseding Indictment in the Federal Prosecution, on or about August 22, 2004, a sewer collapsed at 15 Mile Road in Sterling Heights.

110. The work to repair the sewer collapse was not let out for competitive bid.

111. As alleged in the First Superseding Indictment, on September 28, 2004, Kilpatrick issued Special Administrator Order No. 2004-05 authorizing Mercado to enter into an emergency amendment (Amendment 2) to CS-1368 increasing the contract by $35 Million Dollars, increasing the total amount of the contract to $95 Million Dollars. This allowed the defendant contractors and Ferguson companies to continue to monopolize the contracts and work coming out of DWSD, effectively shutting out McCormick and other contractors from an opportunity to compete for and receive this additional work.

112. Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that Inland Waters and Soave continued to make sure that FEI received work under CS-1368 and its Amendments to assure itself additional work and other benefits under this contract and/or additional contracts from DWSD.

113. On May 18, 2005, Kilpatrick issued Special Administrative Order No. 2005-07 authorizing Mercado to enter into Amendment 3 to CS-1368 with Inland Waters to add funding to complete repairs and restoration at the 15 Mile Road.

114. Amendment 3 added another $23 Million Dollars to CS-1368 increasing the new total amount of the contract to approximately $118 Million Dollars.

115. In July, 2005, a fourth amendment to CS-1368 was proposed, which would add another $12 Million Dollars to the original project. As alleged in the First Superseding Indictment in the Federal Prosecution, in furtherance of the secret scheme Inland Waters and Soave paid a bribe of $350,000 to Ferguson for Inland to receive this additional amendment.

116. On or about June 28, 2006, Amendment 5 was authorized. CS-1368-5 provided an additional $8 Million Dollars for the contract, thereby increasing the total amount of CS-1368 to $138 Million Dollars. Again, the terms of Amendment 5 were identical to those of the original contract.

117. It should be noted that as emergency needs arose under CS-1368, McCormick was called upon to help and performed isolated work on CS-1368.

118. As alleged in the First Superseding Indictment in the Federal Prosecution, FEI's work under CS-1368 and its amendments eventually netted FEI total payments of approximately $24.7 Million Dollars.

119. But for the secret scheme, McCormick would have received the work performed by FEI on CS-1368. McCormick was damaged in its business and property as a result of the actions of the Defendants in furtherance of the secret scheme, which initially replaced McCormick and thereafter effectively restricted and excluded McCormick from work on CS-1368.

## DWS 638

120. McCormick bid on this DWSD project, was awarded it, entered into a contract with the City of Detroit and performed work under DWS-638.

121. In the course of that work, McCormick submitted Estimates for payments and Change Order requests to DWSD.

122. McCormick submitted a request for final payment on Estimate No. 16, which included a Change Order request for delay time, materials and expenses caused by unexpected conditions. The Change Order Request line item alone was approximately $680,000.00. This Change Order amount was due and proper under the contract.

123. Ultimately, the City of Detroit approved approximately $230,000.00 of the $680,000.00 time delay change order request. The City also paid the remainder of Estimate 16, as

the final payment on WSD – 638.  McCormick disagreed with the City's reduction in payment of its requested change order by approximately $450,000.00.

124.    In 2011 a City of Detroit employee contacted McCormick and asked McCormick questions about Estimate 17. McCormick was not aware of any Estimate 17.  When McCormick asked the City for copies of Estimate 17 the City refused to provide any copies and cut off communications with McCormick on this topic.

125.    McCormick never submitted an Estimate 17 nor a Change Order No. 17.

126.    McCormick never received any funds from any change order request/pay estimate No. 17.

127.    Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that in furtherance of the secret scheme the Defendants herein improperly denied approval of the full amount of the Change Order request 16.  The Defendants then fabricated an Estimate 17 and paid or transferred those monies properly due McCormick from DWS 638 to other projects and/or paid one or more of the Defendants herein approximately $450,000.00, through the fabrication of Estimate No. 17.

128.    The Defendants wrongfully denied the Change Order monies under Estimate 16 that were rightfully due to McCormick so that they could transfer those funds to Defendants herein in furtherance of their illegal scheme.

129.    These funds rightfully belong to McCormick.   The actions of the Defendants caused harm to McCormick's business and property.

## CM-2014 and CM-2015

130.    Based on reasonable inferences from the allegations in the First Superseding Indictment    and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a

reasonable opportunity for further investigation or discovery will likely reveal that the allegations also involve DWSD water and/or sewer line contracts CM-2014 and CM-2015.

131.    As alleged in the First Superseding Indictment and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that these two contracts were awarded to the respective entities (Lakeshore and DCI) in furtherance of the same secret scheme to pay bribes, kickbacks and other gratuities in return for the award of these contracts by the City of Detroit Defendants.  As part of the same secret scheme, Lakeshore and DCI partnered with a Ferguson company in return for the City of Detroit Defendants manipulating the award of the contracts to DCI and Lakeshore respectively, for the financial enrichment of those companies and their owners, officers and directors, including Kasim, Khalif, Rachmale and Hardiman.

132.    As alleged in the First Superseding Indictment and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal Defendant Lakeshore received a Construction Management Services contract with the City of Detroit for east side work (CM-2014) by its owners and officers, Rachmale and Hardiman, secretly agreeing to partner with  FEI or a Ferguson controlled company and/or paying various bribes and kickbacks to or for the benefit of the Ferguson and City of Detroit Defendants.

133.    As alleged in the First Superseding Indictment and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that Lakeshore, through its owners and officers: Rachmale and Hardiman, reached a secret agreement with Ferguson to have Lakeshore misrepresent in its bid that it was partnering with a non Ferguson company, "Company E", (for C-2014).  Lakeshore and Ferguson agreed to this misrepresentation because another Ferguson company, Xcel, had already

openly partnered with another contactor, competing for the same/companion "west side" work on these projects; and, Ferguson did not want to reveal it was part of competing bids for the same/companion "west side" work.

134.    As alleged in the First Superseding Indictment, the City of Detroit Defendants in furtherance of the secret scheme, manipulated the bids and certifications of the bidders and awarded the east side work (CM-2014) to Lakeshore.

135.    On this contract, McCormick and Ferguson were listed as proposed subcontractors and approved by DWSD as subcontractors.  In the course of Part A of this project Ferguson was given the majority of the underground water and sewer line subcontract work and the easier more profitable work.  McCormick was given much less work and the hardest less profitable work.

136.    There were three parts, Part A, Part B and Part C of the contract.   In furtherance of the secret scheme, Lakeshore and Ferguson effectively forced McCormick off the project, denying McCormick work on Parts B and C.   Lakeshore forced McCormick off the project by bringing in and utilizing another defendant herein as a subcontractor on the contract, A & H Contractors, Inc.  This was a company owned and/or controlled by Lakeshore managers and principals, co-Defendants Rachmale and Hardiman.

137.    As alleged in the First Superseding Indictment it appears that A & H also agreed to secret deals to partner with Ferguson and pay bribes and other gratuities to or for the benefit of Ferguson and City of Detroit Defendants.

138.    Lakeshore brought in A & H Contractors as a subcontractor for all underground water and sewer line work on the project, essentially replacing all other contractors except Ferguson; and, Lakeshore also brought in E & T Trucking (owned by a relative/friend of Ferguson), to perform underground water and sewer line contract.

139.    While Ferguson was on the project, McCormick was offered no work on Part B or Part C. McCormick had been effectively kicked off the project.

140.    This left Lakeshore/A & H/Ferguson/E & T to perform the underground work on Parts B and C of the project. Later, when Ferguson was prohibited from performing any further work on Part C, McCormick was asked to perform remaining work on Part C.

141.    In furtherance of the secret scheme, the actions of the City of Detroit Defendants, Lakeshore, Rachmale, Hardiman, A & H and Ferguson, effectively limited and/or excluded work and revenue from McCormick   on the eastside work (CM-2014). In addition, the work McCormick did perform was more difficult and as a result less profitable than the work performed by Ferguson and A & H.

142.    As such, the actions of the Defendants caused harm to McCormick's business and property.

### CM-2015

143.    In furtherance of the secret scheme, Detroit Contracting, Inc. (DCI) received a Construction Management Services contract with the City of Detroit for west side water main work (CM-2015) by its owners, Kasim and Khalif, agreeing to enter into a joint venture with Ferguson's company, defendant, Xcel, LLC and to utilize a Ferguson company to perform underground water and sewer line work on the project. The resulting joint venture was defendant, Detroit Program Management JV Team, LLC.

144.    As part of the bid to receive the Construction Management Contract, the Joint Venture proposed McCormick, D'Agostini, Imperial and Ferguson Enterprises as subcontractors on the project. The Detroit Water and Sewerage Department Board awarded the contract, specifically approving McCormick and the others as subcontractors for this project.

145. On this contract (CM-2015), McCormick was allowed to do some underground water work. However, in furtherance of the secret scheme, McCormick was given less work than Ferguson or Xcel, and the work McCormick was given was more difficult than the work Ferguson or Xcel was given, and hence, less profitable.

146. Based on reasonable inferences from the allegations in the First Superseding Indictment and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that in furtherance of the secret scheme, DCI, Xcel and Detroit Program Management, paid themselves more than they paid to McCormick for the same or similar work, and, charged and received from the City of Detroit higher unit prices for the work performed by McCormick than the unit prices they paid McCormick for doing the work and then they pocketed the difference.

147. In furtherance of the secret scheme the actions of the City of Detroit Defendants, Ferguson, DCI and its owners, officers and directors, Kasim and Khalif, Xcel and Detroit Program Management JV Team, effectively limited and/or excluded McCormick from a reasonable and fair amount of the west side work (CM-2015) at fair and reasonable rates for performing the same or similar type of work as DCI, Xcel and Detroit Management. In addition, McCormick's work was more difficult and as a result less profitable than the work allocated to DCI, Xcel and Detroit Program Management.

148. McCormick was damaged in its business by the acts of the Defendants herein.

### DWS 864 and DWS 865

149. DWSD released for bid water and sewer line repair work for the east side of the City – DWS 864 and for the west side of the City – DWS 865.

150.     As alleged in the First Superseding Indictment and drawing reasonable inferences therefrom, and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that the allegations in the First Superseding Indictment involve DWSD 864 and DWS 865 and that,  in furtherance of the secret scheme Soave and Inland agreed to form a joint venture with a Ferguson entity in order to be awarded DWSD 864.   Ferguson established a joint venture with Inland and formed Inland/Xcel LLC to bid on DWS 864.  Thereafter, Inland and Xcel received the award of DWS 864 to their joint venture, Inland/Xcel LLC.

151.     As alleged in the First Superseding Indictment and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal  that in furtherance of the secret scheme Rachmale, Hardiman, Lakeshore agreed to establish a joint venture with a Ferguson entity in order to be awarded DWSD 865.  Ferguson established a joint venture with Lakeshore to bid on DWS 865.  Thereafter, Lakeshore was awarded DWS 865.

152.     It's unclear at this point if Ferguson's affiliation with Lakeshore was concealed as part of the bid process.

153.     As alleged in the First Superseding Indictment and pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal that these two contracts were awarded to the respective entities through the same or similar process of secret deals to pay bribes, kickbacks and other gratuities to or for the benefit of the Ferguson and City of Detroit Defendants and/or partnering with a Ferguson company in return for the City of Detroit Defendants manipulating the award of the contracts to Inland and Lakeshore respectively.

154.    The Defendants, Inland, Soave, Lakeshore, Rachmale, Hardiman, Ferguson, Xcel Inland/Xcel LLC and the City of Detroit Defendants, received significant revenue, profits, and illegal bribes and kickbacks in connection with the award of these contracts.

155.    But for the secret scheme McCormick would have competed for and would have received work as an underground water and sewer line subcontractor on these projects. However, in furtherance of the secret scheme McCormick was shut out from any opportunity to participate in either contract as a subcontractor.

156.    Thus, the secret scheme and acts in furtherance of the scheme among the Defendants resulted in the complete exclusion of McCormick from any work on these projects, and accordingly, the loss of a reasonable and fair amount of revenue and profit from these projects, causing damage to its business.

## ADDITIONAL UNKNOWN CONTRACTS AT ISSUE

157.    As alleged in the First Superseding Indictment, the Defendants engaged in a secret scheme to exchange bribes, kickbacks and other gratuities in return for the award of DWSD contracts.  To implement this secret scheme the Defendants engaged in a pattern of racketeering, awarding underground water and sewer line contracts and subcontracts among the Defendants, to the exclusion of other underground water and sewer line contractors such as McCormick.

158.    Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal McCormick was excluded from consideration and involvement in additional contracts that it would have otherwise been included in, but for the acts of the Defendants in furtherance of the secret scheme.

159.    McCormick was damaged in its business when it was excluded from the additional unknown contracts, which contracts will be identified with specificity in the course of discovery in this matter.

160.     McCormick seeks full damages and relief with respect to the additional unknown contracts it was excluded from in the course of the secret scheme.

## FRAUDULENT CONCEALMENT

161.     The Defendants fraudulently concealed their secret scheme to exchange bribes, kickbacks and other gratuities in return for the award of DWSD contracts and subcontracts.

162.     The Defendants scheme was inherently self-concealing.   Concealment was a necessary component of the scheme, for it to be successful.

163.     Many details and methods of the fraudulent concealment are detailed in the above section, "FEDERAL PROSECUTION EXPOSES THE SECRET SCHEME".   Plaintiff incorporates that section in its entirety as if fully re-alleged herein.

164.     The First Superseding Indictment, which is attached hereto and incorporated herein, alleges and provides additional details of the methods and acts of fraudulent concealment utilized by the Defendants to conceal their secret scheme.

165.     Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal additional facts establishing the methods and means the Defendants utilized to conceal their secret scheme.   This is particularly true as the trial in the Federal Prosecution is ongoing at the time of filing this Complaint and almost daily, witnesses are testifying to heretofore undisclosed activities which fraudulently concealed the secret scheme carried out among the Defendants.

166.     The Defendants' unlawful scheme was made virtually undetectable by the absolute authority of Kwame Kilpatrick in his position as Mayor of the City of Detroit, who was also vested with "super authority" through his appointment by the federal district court as the DWSD Special Administrator.   His power as the Special Administrator allowed him to manipulate the award of DWSD contracts with virtually no oversight or involvement of any other City

department or elected official.  In addition, the day to day oversight of DWSD operations was under the control of Victor Mercado, who actively concealed the ongoing wrongdoing through his participation in the secret scheme.  The Defendants conducted their bribery, extortion and racketeering in secret and only between themselves.  The concealment was so effective that, as alleged by the United States Government in the First Superseding Complaint, the Defendants were successful in, "Concealing and protecting the activities of the Enterprise from detection by law enforcement officials and the Federal Judiciary, as well as from exposure by the Detroit City Council and the news media, through means that included, among other things, perjury, witness tampering and obstruction of justice."

      167.    By way of example but not limitation, as alleged in the First Superseding Indictment and evidence in the Federal Prosecution trial suggests, the Defendants engaged in the following acts to fraudulently conceal their illegal scheme in the following ways:

      a.    Bribes, kickbacks and gratuities to or for the benefit of Ferguson, the Kilpatricks and others were concealed by:

          i.    Paying bribes in cash through third party couriers;

          ii.    Paying bribes from accounts of companies not directly involved in the DWSD contracts, to conceal the payments from the Defendants' own employees and third parties;

          iii.    Paying bribes to third party companies not involved in the DWSD contracts, and then having the money funneled from those third party companies to a defendant;

          iv.    Paying bribes by the payment of invoices to the City of Detroit for work that was never performed;

          v.    Paying bribes by donations to charities and political campaigns in which Defendants had direct or indirect interests;

vi.  Paying bribes by providing "in kind" gratuities to or for the benefit of the Kilpatrick Defendants or their families, such as private jet flights, hotel rooms and gifts;

vii.  Providing cash or money orders to "straw donors" who then made contributions to charities or political campaigns connected with the Kilpatrick Defendants.

b.  As alleged in the First Superseding Indictment the Defendants engaged in other methods to conceal their secret scheme by:

i.  Concealing the involvement of Ferguson in a contract during the submission of a contract bid to DWSD;

ii.  Bringing in proxy companies as bidding partners when the bidder knew that a Ferguson entity would ultimately be involved and the proxy company would step out;

iii.  Bringing in a Ferguson-controlled company as a subcontractor when the Ferguson-controlled company had not been proposed to or approved by DWSD as a subcontractor on a bid;

iv.  Conducting secret meetings and making secret agreements to pay bribes and bring in Ferguson as a partner or subcontractor;

v.  Conducting secret meetings to remove McCormick from DWSD contracts on which McCormick was a DWSD approved subcontractor;

vi.  Funneling the majority of subcontract work on DWSD contracts to Ferguson companies when there were multiple subs on the contract;

vii.  Manipulating the award of contracts to funnel work to a defendant by secretly altering an innocent contractor's City certifications and thereby improving a defendant's bid ranking so the defendant can receive award of the contract;

> viii.    Secretly altering a defendant's City certifications to enhance their bid ranking so the defendant can receive a contract award over an innocent bidder;

c.    As alleged in the First Superseding Indictment and in testimony in the Federal Prosecution, the Defendants made secret agreements to enhance the amount of work received by participating conspirators and the amount they were paid on the work they received by:

> i.    City of Detroit Defendants would deliver additional work to the Contractor Defendants by giving them contract amendments to existing contracts rather than request competitive bids for the new work;

> ii.    City of Detroit Defendants withdrew or significantly reduced work site inspection and oversight of Contractor Defendants' work;

> iii.    City of Detroit Defendants paid invoices from the Defendants with little or no verification that the invoices accurately reflected work performed;

> iv.    City of Detroit Defendants would hold up the award of DWSD contracts;

d.    As alleged in the First Superseding Indictment, the Defendants concealed their secret scheme through perjury, witness tampering and obstruction of justice, by:

> i.    Directing witnesses to lie to investigators and authorities as to the source of funds used as charitable or campaign donations;

> ii.    Lying under oath during investigations by the Federal Court into the propriety of the award of a security contract;

168.    McCormick was unaware of the secret scheme of the Defendants.  The secret scheme of the Defendants was only revealed to the public for the first time through the First Superseding Indictment of December 15, 2010.

169.   The scheme  was only uncovered through law enforcement's use of its investigative powers,  including statements and interviews of potential witnesses by law enforcement officers of the United States, which witnesses were under legal duty to cooperate with the investigations or face criminal prosecution for obstruction of justice. We have learned in the course of the ongoing Federal Prosecution trial that some witnesses may have been granted immunity from prosecution in exchange for their testimony, and perhaps most importantly, compelled to testify under Grand Jury proceedings which ultimately resulted in the issuance of the First Superseding Indictment, revealing the secret scheme.

170.   McCormick exercised due diligence to discover the secret scheme and wrongdoing in light of the circumstances.  As a business which competed regularly for DWSD work and won some and lost some contracts and subcontracts, it was not out of the ordinary for other contractors to receive contracts or subcontracts.   Under the circumstances McCormick exercised due diligence to determine if its loss of business stemmed from unlawful activity for which it could bring a claim.  McCormick:

a.     Relied upon the City of Detroit's published ordinances, rules, and formal written standards of conduct which prohibited public officials from performing official acts for private gain, disclosing confidential information to third parties for private gain, and using municipal resources for commercial gain;

b.     Relied upon the oversight and supervision of DWSD and its operation by the Federal District Court, Judge Feikens, the presiding Judge in the City of Detroit's environmental case;

c.     Relied upon Kilpatrick's authority as Special Administrator, to oversee the proper administration of DWSD contract bidding and award;

d.     Relied upon the past practices of the DWSD officials and contracting process;

e.  Relied upon the elected officials and employees of the City of Detroit to monitor and administer the DWSD procurement process pursuant to City Charter, Ordinances and bidding requirements.

171.  Under the circumstances, McCormick could not have discovered the secret scheme of the Defendants.  McCormick did not discover and could not have discovered that it had been subjected to actionable conduct until the release of the First Superseding Indictment on December 15, 2010.

## COUNT I
## CIVIL RICO – 18 USC §1962(c) and (d)
### (All Defendants except the City of Detroit)

172.  The Plaintiff re-alleges and incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint, as though fully set forth herein.

173.  For the purpose of McCormick's Civil RICO claim,  Plaintiff, McCormick & Associates, Inc., is a person within the meaning of 18 USC §1961(3).

174.  For all pertinent times herein the Plaintiff was a person injured in its business or property by reason of the violations of RICO within the meaning of 18 USC §1964(c).

175.  Each of the following Defendants is a person within the meaning of 18 USC §1961(3), and is considered a member, associate, and participant in the Kilpatrick Enterprise:

Former Mayor Kwame Kilpatrick
Bernard Kilpatrick
Bobby W. Ferguson
Victor M. Mercado
Derrick A. Miller
Anthony Soave
Inland Waters Pollution Control, Inc.
Ferguson's Enterprises, Inc.
Lakeshore
Inland/Excel, LLC
Xcel Construction Services, Inc.
Maha Kasim
Nafa Khalif
Detroit Contracting, Inc.

Avinash Rachmale
Thomas Hardiman
Detroit Program Management JV Team, LLC

176.    Each of the foregoing Defendants engaged in conduct as a member or associate of the Kilpatrick Enterprise. The conduct of these Defendants constitutes a pattern of racketeering activity within the meaning of 18 USC §1961(5) in violation of 18 USC § 1962(c). The acts of racketeering were related to each other by virtue of a common group or participants, a common victim (McCormick, among others) and with the common purpose and result of monopolizing the award of DWSD underground water and sewer line contracts.

177.    The Defendants agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of 18 USC 1962(d).  The Defendants committed and caused to be committed the acts set forth herein in furtherance of the scheme and conspiracy.

178.    As alleged in the First Superseding Indictment,  the racketeering activity involved exchanging bribes for the award of DWSD contracts and requiring a Ferguson entity be hired as a subcontractor.  This scheme provided the defendants with illegal revenue and profits derived from these activities, as detailed above.

179.    The various predicate acts involved herein include bribery, extortion, and money laundering.

180.    This pattern of activity and the conspiracy to commit same focused on the City awarding DWSD contracts and subcontracts to Ferguson entities which then excluded and restricted McCormick from receipt of DWSD contracts and subcontracts.  This was an actual and proximate cause of injury to the business and property of McCormick.

181.    Based upon reasonable inferences from the allegations as set forth in the First Superseding Indictment, the Kilpatrick Enterprise associated together in an ongoing

organization for the common purpose of financially enriching themselves and their friends and associates. They conspired to and operated as an association-in-fact enterprise within the meaning of 18 USC §1961(4) (the "Kilpatrick Enterprise" or "Enterprise") , for the purpose of exchanging bribes, kickbacks and other gratuities in return for the award of DWSD water and sewer line contracts and subcontracts, to the exclusion and detriment of McCormick and other non-conspiring contractors.

182.     The Kilpatrick Enterprise and its members engaged in, and its affairs substantially affected and involved, interstate commerce as more fully set forth above, and, as a result of its members and their agents procuring contracts with out-of-state companies for goods and service and using interstate wires to transmit funds, to send and receive billing and payment-related documents and for other communications.

183.     The Kilpatrick Enterprise was conducted through an overall pattern of misconduct, racketeering activity, and fraudulent concealment, which encompassed and weaved its way through a number of DWSD contracts for the period from approximately January 1, 2002 to approximately December 31, 2008.

184.     During the relevant time period, known and unknown current and past owners, officers, employees, agents and representatives of some or all of the corporate entities that were part of the Kilpatrick Enterprise were authorized to act and did act for the benefit of their affiliated corporate entity in furtherance of the Kilpatrick Enterprise.   The City of Detroit Defendants , Kwame Kilpatrick, Victor Mercado and Derek Miller, were acting in their individual capacities and in their official capacities under color of law as elected and appointed officials in the City of Detroit.

185. During the relevant time period, the corporate entities and individual Defendants that were part of the Kilpatrick Enterprise knowingly accepted and received the benefits from their acts.

186. As alleged in the First Superseding Indictment and set forth in this Complaint, the Defendants conspired to and willingly committed the following acts while participating in and conducting the affairs of the Kilpatrick Enterprise:

- Participated in, aided, and abetted bribery in violation of 18 USC §201;
- Participated in money laundering in violation of 18 USC § 1956;
- Participated in extortion in violation of 18 USC §1951;
- Acted as a willing associate of the Kilpatrick Enterprise; and
- Other additional predicate acts that become known in the course of this matter.

187. As set forth in the First Superseding Indictment and in this complaint the Defendants have engaged in a pattern of racketeering activity as defined in 18 USC §1961(5), committing or conspiring to commit at least two acts of racketeering activity described herein, within a period of 10 years.

188. The Defendants engaged in the above described schemes knowingly and with the intent to funnel contracts to Ferguson entities and other conspiring contractors, monopolizing and restraining competition for DWSD contracts and subcontracts and thereby enriching themselves by millions, tens of millions and perhaps hundreds of millions of dollars at the expense of competing contractors such as McCormick.

189. The Defendants' conspiracy and actions in furtherance of the conspiracy violated 18 USC §1962(c) and (d) and thereby directly, legally, and proximately caused injury to McCormick's business and property in the past and in the future.

**PRAYER FOR RELIEF**

190.    McCormick is entitled to recover damages pursuant to 18 USC §1961, et seq.,

which damages include but are not limited to:

     a.     The gross receipts/profits of the Defendants and/or profits lost by McCormick from DWSD contracts or subcontracts, past and future, as a result of the wrongdoing of the Defendants herein;

     b.     Punitive and exemplary damages as permitted by law;

     c.     Any and all other appropriate damages and/or injunctive/equitable relief.

191.    As a result of Defendants' violations of 18 USC §1962, McCormick is

entitled under 18 USC §1964(c) to recover treble damages, attorney fees, and costs.

WHEREFORE, the Plaintiff requests entry of a judgment, jointly and severally,

against the Defendants, Inland Waters, Soave, Bernard Kilpatrick, Kwame Kilpatrick, Victor

Mercado, Derek Miller,  Bobby Ferguson, Ferguson Enterprises, Inc., Xcel Construction Service,

Inc., Inland/Xcel, LLC, Avinash Rachmale, Thomas Hardiman, Maha Kasim, Nafa Khalif, Detroit

Contracting, Inc., , Detroit Program Management JV Team, LLC,  and Lakeshore in an amount

and manner to be determined at trial together with treble damages, punitive and exemplary

damages, interest, costs, and attorneys' fees.

**COUNT 2**
**ANTI TRUST BID RIGGING IN  RESTRAINT OF TRADE AND**
**MONOPOLIZATION OF THE MARKET – 15 USC §1 et. seq.**
**(All Defendants including  the City of Detroit)**

192.    The Plaintiff re-alleges and incorporates by reference the allegations set

forth in the preceding paragraphs of this Complaint, as though fully set forth herein.

193.    McCormick brings this claim pursuant to Section 4 of the  Clayton Act, 15 USC §15, to recover for injuries to its business, sustained as a result of the Defendants' violation of the Section 1 of the Sherman Act, 15 USC §1, et. seq.

194.    McCormick, and the Contractor Defendants in this case, along with other construction management companies, general contractors and water and sewer line contractors, regularly bid on and compete for DWSD water and sewer line projects.

195.    The bids are reviewed and pursuant to the City of Detroit ordinances, are awarded to the lowest responsive responsible bidders.  The successful bidder, depending on the nature of the project, may utilize subcontractors for all or portions of its contract.  In those instances where a subcontractor may be used, City bidding rules require the bidder to identify the proposed subcontractors and their qualifications and certifications, and, receive approval from DWSD in order to have the subcontractor perform work on the project.  Under DWSD and City procurement rules and contract terms, no subcontractor is permitted to perform work on a project without prior approval from DWSD.

196.    In this case there is a single purchaser, the City of Detroit and its Water and Sewerage Department. There are multiple sellers (the contractors) who compete with each other and offer their services when they bid on projects released for bid by DWSD.

197.    The Relevant Market for purposes of this action is the market for City of Detroit Water and Sewerage Department contracts and subcontracts for underground water and sewer lines work.  The relevant geographical market is the City of Detroit and the communities in South East Michigan serviced by the DWSD water and sewer line infrastructure.

198.    As alleged in the First Superseding Indictment the Defendants entered into and carried out a secret scheme to exchange bribes, kickbacks and gratuities for the award of DWSD contracts and subcontracts by the City, to enrich themselves and their co-conspirators

through the receipt of illegal revenue and profits.  Through collusion, bid rigging and contract manipulation the City of Detroit Defendants, Kwame Kilpatrick, Victor Mercado and Derek Miller (in their individual and official capacities, while acting under color or law on behalf of the City of Detroit)  steered the award of DWSD water and sewer line contracts and subcontracts to Ferguson Defendants and conspiring Contractor Defendants:  Anthony Soave and his company Inland Waters, Avinash Rachmale and Thomas Hardiman and their companies Lakeshore and A & H Contractors, Inc., Bobby Ferguson and his companies Ferguson Enterprises and Xcel, and Maha Kasim, Nafa Khalif and their company Detroit Contracting, Inc.  In return for receiving the award of these DWSD contracts the Contractor Defendants agreed to and in fact did: (1) partner with or hire a Ferguson controlled company to perform underground water and sewer line work on each project; and (2) pay bribes, kickbacks and other gratuities to and for the benefit of Bobby Ferguson, Kwame Kilpatrick and other associates.

199.    One result of this scheme was to exclude or minimize other underground water and sewer contractors, such as McCormick, from receiving DWSD contracts and subcontracts.  As such, the Defendants' conduct in furtherance of the secret scheme had anti-competitive effects on the marketplace.  The scheme monopolized and restrained competition in the marketplace for DWSD contracts.   This deprived other underground water and sewer contractors, like McCormick, from  receiving DWSD underground water and sewer work.   The Plaintiff, Willie McCormick & Associates, Inc. suffered harm to its business and property as a result of this scheme.

200.    As alleged in the First Superseding Indictment, pursuant to and in furtherance of the secret scheme, the Defendants rigged and manipulated the award of underground water and sewer line contracts in a variety of ways to funnel the work to a Ferguson company. This caused harm by restraining trade in the marketplace for DWSD underground water

and sewer line contracts, harming McCormick's business as well as others.  The Defendants used various means to carry out their scheme, including but not limited to the following:

    a.    The Defendants removed non-conspiring contractors, such as McCormick, from DWSD projects and replaced them with one or more of the colluding Defendants, primarily a Ferguson controlled company;

    b.    The Defendants paid bribes and kickbacks to others within the conspiracy and/or hired conspiring Co-Defendants, such as Ferguson, as partners and subcontractors in return for receiving the award of DWSD contracts and accompanying benefits;

    c.    The Defendants shut out non-colluding subcontractors, such as McCormick, on DWSD underground water and sewer contracts, excluding them from such projects, and instead, only considering and awarding the subcontracts or joint venture work on DWSD underground water and sewer contracts to a conspiring Defendant contractor, most often a Ferguson company.

201.    Pursuant to F.R.C.P. 11(b)(3), upon information and belief, a reasonable opportunity for further investigation or discovery will likely reveal additional acts in furtherance of the scheme  in restraint of trade:

    a.    In those instances where non conspiring contractors such as McCormick worked on a DWSD project with Defendant entities, the  Defendants unlawfully restricted or reduced  the amount of work and revenue received by innocent contractors such as McCormick, providing more underground water and sewer line work and higher revenue to conspiring Defendant contractors and subcontractors, such as Ferguson;

    b.    In those cases where a non-conspiring contractor such as McCormick worked on a DWSD project with the conspiring Defendant entities, the Defendants funneled the easiest and therefore most profitable project tasks to conspiring co-Defendants like Ferguson and relegated the hardest, most difficult underground water and sewer line work, and therefore the least profitable, to other innocent contractors such as McCormick;

    c.    Other means and methods as set forth above and that will be discovered and revealed in the course of this matter.

202.    Beginning in 2002 and continuing through 2008, the Defendants engaged in an unreasonable restraint of trade, exchanging bribes, kickbacks and other gratuities for the award of DWSD water and sewer line contracts and subcontracts, effectively excluding and harming competitors in the marketplace, such as McCormick, in violation of Section 1 of the Sherman Act, 15 USC §1, et. seq.

203.    Throughout the time period of this conspiracy the Defendants were enriched through the award of DWSD underground water and sewer line contracts and subcontracts.

204.    The Defendants' activities violated 15 USC §1, et. seq., which actions directly, legally, and proximately caused injury to McCormick's business and property in the past and future.

## PRAYER FOR RELIEF

205.    McCormick is entitled to recover damages which include, but are not limited to:

    a.    The gross receipts/profits of Defendants and/or revenue or profits lost by McCormick, past and future, as a result of the Defendants' unlawful restraint of trade and monopolization of the market place;

    b.    Any and all other appropriate damages and injunctive/equitable relief.

    c.    Punitive and exemplary damages.

206.    As a result of Defendants' violations of 15 USC §1 et. seq., McCormick is entitled under Section 4 of the Clayton Act, 15 USC §15 to recover treble damages, attorney fees, and costs.

WHEREFORE, the Plaintiff requests entry of a judgment, jointly and severally, against the Defendants, Inland Waters, Soave, Bernard Kilpatrick, Kwame Kilpatrick, Victor Mercado, Derek Miller, the City of Detroit, Bobby Ferguson, Ferguson Enterprises, Inc., Xcel Construction Service, Inc., Inland/Xcel, LLC, Detroit Contracting, Inc., Maha Kasim, Nafa Khalif, Avinash Rachmale, Thomas Hardiman, A & H Construction Services, Inc., Detroit Program Management JV Team, LLC.,  Lakeshore and the City of Detroit in an amount and manner to be determined at trial together with gross receipts or profits, treble damages, punitive and exemplary damages, interest, costs, and attorneys' fees and all other relief to which the Plaintiff is entitled.

## COUNT 3
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, 42 USC §1983 and 42 USC §1981.
### (City of Detroit, Kwame Kilpatrick, Victor Mercado and Derek Miller)

207.    The Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint, as though fully set forth herein.

208.    The actions of the City of Detroit has caused McCormick to suffer: (a) A deprivation of its constitutional rights to Equal Protection under the Law, as protected by the Fourteenth Amendment to the United States Constitution and 42 USC §1983; and (b) a denial of its right to full and equal benefits under the law as protected under 42 USC §1981.

209.    Beginning in 2002 and continuing through 2008, under color of law, the City of Detroit, through the direction and control of the Mayor, Kwame Kilpatrick, the active participation of the Director of the City of Detroit Water and Sewerage Department, Victor Mercado and City of Detroit employee, Derek Miller, (all acting in their official capacities) established and implemented a policy and practice of the City of Detroit to steer  the award of underground water and sewer line contracts and subcontracts from DWSD in favor of the Ferguson Defendants, to the exclusion and detriment of McCormick.

210.   As alleged in the First Superseding Indictment, Bobby Ferguson owned and controlled companies, including FEI and Xcel, were awarded DWSD underground water and sewer line contracts and subcontract approvals by the City of Detroit as part of the secret scheme among the Defendants to exchange bribes for the award of DWSD contracts.  This resulted in McCormick being excluded from DWSD underground water and sewer line contracts and subcontracts.  But for this unlawful conduct McCormick would have been given the opportunity to compete for and would have received DWSD water and sewer line work.  FEI and McCormick were both Detroit Based Minority Owned contractors.   In all relevant respects, the Bobby Ferguson businesses and McCormick were similarly situated businesses with no material differences for purposes of this claim.

211.   The City of Detroit, through Kwame Kilpatrick, Victor Mercado and Derek Miller, at all times acting in their official capacities under color of law, intentionally treated McCormick differently from the Ferguson Defendants in a number of ways, including but not limited to:

a.   Facilitating the removal of McCormick from DWSD projects on which it had been approved as a subcontractor and replacing McCormick with a Ferguson company;

b.   Awarding DWSD contracts and amendments to bidders who partnered with a Ferguson company or hired a Ferguson company as a subcontractor so as to exclude McCormick from consideration for DWSD contracts and subcontracts;

c.   Permitting, acquiescing  or directing bidders who partnered with a Ferguson company or hired a Ferguson company as a subcontractor to force McCormick off of DWSD projects, and thereby keep the remaining tasks and revenue for the bidder and the Ferguson company;

d.   Permitting, acquiescing or directing that a Ferguson company control the assignment of work and the type of work performed on projects in which McCormick was involved, so as to provide the largest quantity of work  to the

55

Ferguson company, and also, the easiest and most profitable work to the Ferguson company;

e.       Additional acts and omissions as set forth earlier in this Complaint.

212.    There was no lawful and rational basis for treating McCormick differently than Ferguson.  To the contrary, the purpose for intentionally treating McCormick differently, was to implement an illegal scheme and conspiracy.

213.    The City of Detroit through Kwame Kilpatrick, Victor Mercado and Derek Miller,   acting under color of law, rigged and controlled the award of underground water and sewer line contracts and subcontracts from DWSD to funnel the majority of DWSD underground water and sewer line work to a Ferguson company.   This conduct removed, excluded or substantially restricted McCormick from work on DWSD projects.

214.    The  conduct of the City of Detroit  has caused McCormick to suffer: a) a deprivation of its rights to Equal Protection Under the Law in violation of the Fourteenth Amendment to the United States Constitution and 42 USC §1983; and, b) denial of equal benefits under the law pursuant to 42 USC §1981.

215.    The Defendants' acts in treating McCormick differently from Ferguson were done intentionally.

216.    There is no legitimate basis for treating McCormick differently than Ferguson, because the basis for the disparate treatment was to execute an unlawful scheme to exchange bribes, kickbacks and other gratuities in return for the award of DWSD contracts and subcontracts.

217.    Because the conduct of the Defendants was for the purpose of carrying out an illegal scheme to exchange bribes, kickbacks and other gratuities for the award of DWSD water

and sewer contracts and subcontracts, there is no combination of legitimate purposes that can support a finding of a rational basis for treating McCormick differently than Ferguson.

218.    The actions of the Defendants were motivated by animus or ill will, for the purpose of carrying out an illegal scheme to exchange bribes, kickbacks and other gratuities for the award of DWSD contracts and subcontracts, to enrich themselves and co-conspirators to the detriment of McCormick and other contractors.

219.    The Defendants' actions were done in knowing violation of McCormick's legal and constitutional rights.

220.    As a direct, legal and proximate cause of the actions of the Defendants, McCormick has been denied its constitutional and statutory rights as stated herein and has suffered damages to its business, past and future.

221.    The actions of the Defendants were willful, malicious, oppressive and done with conscious disregard and deliberate indifference to McCormick's rights.   As such, the Defendants' actions justify an award of Punitive Damages for McCormick, the amount to be determined at the time of trial.

222.    McCormick has no adequate remedy under state law to redress the wrongs committed by the Defendants in this matter.

## PRAYER FOR RELIEF

223.    McCormick is entitled to recover damages which include but are not limited to:

    a.    The gross receipts/profits of Defendants and/or revenue/profits lost by McCormick from DWSD contracts, past and future, due to the illegal activity of the Defendants;

    b.    Punitive damages as permitted by law against the Defendants.

       c.     Any and all other appropriate damages and injunctive/equitable relief.

224.    Award McCormick costs, expenses and attorney fees pursuant to 42 USC §1988.

WHEREFORE, the Plaintiff requests entry of a judgment, jointly and severally, against the Defendants, City of Detroit, Kwame Kilpatrick, Victor Mercado and Derek Miller, in an amount and manner to be determined at trial together with gross receipts or profits, punitive damages, interest, costs, and attorneys' fees and all other relief to which the Plaintiff is entitled.

Respectfully submitted,

FOSTER, MEADOWS & BALLARD, P.C.

By: *s/Robert Lahiff*
Robert Lahiff
Attorneys for Plaintiff
607 Shelby – 7th Floor
Detroit, Michigan 48226
313-961-3234
rlahiff@fostermeadows.com
P36726

Dated: December 13, 2012
00111894.DOCX

## DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, WILLIE MCCORMICK & ASSSOCIATES, INC., by and through its counsel, Foster, Meadows & Ballard, PC, and pursuant to FRCP 38(b), hereby requests a trial by jury of all claims asserted in this Complaint which are so triable.

Respectfully submitted,

FOSTER, MEADOWS & BALLARD, P.C.

By: *s/Robert Lahiff*_____
Robert Lahiff
Attorneys for Plaintiff
607 Shelby – 7th Floor
Detroit, Michigan 48226
313-961-3234
rlahiff@fostermeadows.com

Dated: December 13, 2012                    P36726
00111894.DOCX

59