UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE MCCORMICK & ASSOCIATES, INC.,

Plaintiff,

v.

LAKESHORE ENGINEERING SERVICES, INC., ET AL.,

Defendants.

Case No. 12-15460

SENIOR UNITED STATES DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE MONA K. MAJZOUB

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR RELIEF FROM INTERLOCUTORY ORDER [128]**

On April 23, 2013, Plaintiff filed its Amended Complaint [Doc. #33]. Plaintiff brought antitrust and Racketeer Influenced and Corrupt Organizations (RICO) Act claims against many defendants, as well as an Equal Protection Clause claim (pursuant to 42 U.S.C. §§ 1983 and 1981) against Defendants Kwame Kilpatrick, Victor Mercado, and Derrick Miller. On December 20, 2013, the Court issued an Order [96] dismissing with prejudice Plaintiff's antitrust and RICO claims against Defendants Anthony Soave, Lakeshore Engineering Services, Inc., Avinash Rachmale, Lakeshore Toltest, Toltest Corporation, Thomas Hardiman,

1

A&H Contractors, Inc., Inland Waters Pollution Control, Inc., Inland/XCel, LLC, Detroit Contracting, Inc., Nafa Khalaf, and Detroit Management JV Team, LLC (the Dismissed Defendants).

On August 15, 2014, Plaintiff filed a Motion for Relief from Order or for Leave to Amend Complaint [128]. On August 22, 2014, the Court issued an Order [131] directing the Dismissed Defendants to file a consolidated response brief by September 19, 2014. On September 19, 2014, a majority of the Dismissed Defendants filed a consolidated Response [133].[1] Plaintiff filed a Reply [135] on September 25, 2014.

For the reasons stated below, Plaintiff's Motion for Relief from Order or for Leave to Amend Complaint [128] is **GRANTED**. The Court's Order [96] dismissing with prejudice Plaintiff's claims against the Dismissed Defendants is **VACATED IN PART**. Plaintiff's antitrust and RICO claims against the Dismissed Defendants are **REOPENED**. The Court will resolve the Dismissed Defendants' alternative arguments for dismissal after an opportunity for a second hearing.

---

[1] Dismissed Defendants Thomas Hardiman and A&H Contractors, Inc. filed a Notice of Joinder [134] on September 25, 2014.

## FACTUAL BACKGROUND

In the Order under reconsideration, the Court recounted the factual background of the case as follows:

> Plaintiff Willie McCormick & Associates, Inc., ("McCormick") brings the present antitrust and RICO action alleging collusion and fraudulent conspiracy between and among Defendants. McCormick places the Defendants in three groups within the conspiracy: (1) The Public Official Defendants;[2] (2) The Ferguson Defendants;[3] and [3] The Contractor Defendants.[4]
>
> . . .
>
> McCormick is an underground water and sewer contractor. Since 1992, it has performed water and sewer-line work almost exclusively for the Detroit Water and Sewerage Department ("DWSD"). Defendants orchestrated a secret bid-rigging scheme whereby water and sewer subcontracts for the DWSD were distributed amongst Defendants. They conspired with each other to rig bids, overcharge the DWSD for services performed on its sewers and water-lines, receive kickbacks, and manipulate DWSD contracts and subcontracts to exclude contractors, such as McCormick, who were not members of the conspiracy. McCormick also claims that Defendants fraudulently concealed their scheme from the authorities and McCormick, and that the extent of the fraudulent activity only became known on December 15, 2010, when the grand jury released the First Superseding Indictment in *United States v. Kilpatrick*, No. 10-20403.

---

[2] Defendants Kilpatrick, Miller, and Mercado.

[3] Defendants Ferguson, Ferguson's Enterprises, Inc., Xcel, Detroit Management Program JV Team, LLC, Inland/Xcel, LLC, "and other 'proxy' companies acting at Ferguson's direction."

[4] Defendants Soave, Inland Waters Pollution Control, Inc., Inland/Xcel, LLC, Nafa Khalaf, Detroit Contracting, Inc., Detroit Program Management JV Team, LLC, Avinash Rachmale, Thomas Hardiman, and LakeShore and A & H Contractors, Inc.

3

      The Public Official Defendants used their authority with the City of Detroit and the DWSD to control the award of DWSD contracts, rig the contract bidding process, and steer DWSD contracts to members of the conspiracy. The Ferguson Defendants approached the Contractor Defendants to solicit their agreement to include the Ferguson Defendants as subcontractors on all DWSD bids. The Contractor Defendants agreed to participate in the bid-rigging and to pay kick-backs to the Ferguson and Public Official Defendants in exchange for a monopoly of DWSD contract awards with "little or no supervision" from the DWSD. The ultimate effect of these activities was to steer all DWSD work to members of the conspiracy, thereby insuring that *only* members of the conspiracy would be included as contractors and subcontractors on DWSD contracts, regardless of whether their bid was lowest during the contract bidding process. McCormick claims that but for Defendants' unlawful conspiracy, it would have received contracts [from the DWSD] and subcontracts from the DWSD [general contractors].

## ANALYSIS

As a threshold matter, Defendants argue that the instant motion was improperly brought under Federal Rule of Civil Procedure 60(b) because it does not challenge a final order. Plaintiff concedes the point, asking the Court to reconsider its prior order not under Rule 60(b) but instead under Rule 54(b) or under the Court's inherent power. The Court will exercise its inherent authority to review the merits of its prior order. *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("[D]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.") (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)).

As explained below, the Court reconsiders and vacates the following holdings in its prior Order: (1) Plaintiff failed to plead antitrust injury; (2) "other relevant factors" bar Plaintiff from proceeding with its antitrust claim; (3) Plaintiff failed to allege "injury to business or property" as required to maintain a civil RICO claim; and (4) Plaintiff failed to adequately plead the proximate cause element of a RICO claim. Accordingly, Plaintiff's antitrust and RICO claims against the Dismissed Defendants are revived. The Dismissed Defendants have raised alternative grounds for dismissal, but the Court will address them on a later date, after an opportunity for a second hearing.

## I.     Antitrust

Section 4 of the Clayton Act broadly empowers any person "injured in his business or property" by reason of a Sherman or Clayton Act violation to sue for treble damages. *See* 15 U.S.C. § 15(a). A Section 4 plaintiff must have suffered "antitrust injury," meaning "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Though antitrust injury is necessary for antitrust standing, it is not sufficient. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc) (citing *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n. 5 (1986)). In *Associated General*

*Contractors of California, Inc. v. California State Council of Carpenters* (*AGC*), the Supreme Court set forth several factors to be analyzed to determine if a plaintiff alleging antitrust injury has antitrust standing. *See* 459 U.S. 519, 535–46 (1983). The Sixth Circuit has identified five *AGC* factors:

> (1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation.

*Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 402 (6th Cir. 2012) (quoting *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983)). No single factor is dispositive. *Id.* (citing *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 846 (6th Cir. 1990)).

The Court now concludes, in contrast to its prior Order, that Plaintiff has alleged antitrust injury. The Court previously held that Plaintiff's alleged injury— loss of profits from DWSD contract work due to the conspiracy's exclusion of honest (sub)contractors from the market—was not an antitrust injury because it was "better stated as a harm to a competitor, rather than to competition itself." It is true that in the course of holding that certain competitors had not suffered an antitrust injury, the Supreme Court emphasized that the antitrust laws were enacted

6

for the protection of competition, not competitors. *Brunswick*, 429 U.S. at 488. This statement must be understood, however, in the context of the competitors' claims: they complained that the defendant had *preserved* competition. *Id.* These competitors' loss was not an antitrust injury because it did not "stem[] from a competition-*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990). However, a competitor's loss may constitute antitrust injury where it stems from the competitor's exclusion from a market. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451, 457 (6th Cir. 2007) (en banc); *Re/Max Intern., Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999); *Gulf States Reorganization Group, Inc. v. Nucor Corp.*, 466 F.3d 961, 967–968 (11th Cir. 2006); *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc.*, 123 F.3d 301, 305–06 (5th Cir. 1997). Plaintiff has alleged such loss, and has therefore alleged antitrust injury.

The Supreme Court's decision in *AGC* not only reinforces the conclusion that Plaintiff has alleged antitrust injury, but also compels the Court to reconsider its prior holding that "other relevant factors" weigh against recognizing Plaintiff as an appropriate antitrust plaintiff. In *AGC*, the Supreme Court addressed a union's allegation that the defendants had applied coercion to "divert business" in a "market for construction subcontracts" from union (sub)contractors to nonunion

7

(sub)contractors. 459 U.S. at 540–41. The Supreme Court stated that if the union (sub)contractors had in fact been injured by the alleged antitrust violation, "their injuries would be direct and . . . they would have a right to maintain their own treble damages actions against the defendants." *Id.* at 541; *see also id.* at 540 n.44 (stating that "a contracting or subcontracting firm that refused to yield to the defendants' coercive practices and therefore suffered whatever sanction that coercion imposed … could maintain an [antitrust] action against the defendants"); *id.* at 545 (contrasting the indirectly affected union entities and employees with the "directly victimized" contractors and subcontractors). In other words, when setting out the *AGC* factors, the Supreme Court stated—albeit in dicta—that a (sub)contractor raising allegations much like Plaintiff's would be an appropriate antitrust plaintiff. The Dismissed Defendants have not identified any material distinction between the allegations here and those in *AGC*; they only remind the Court that the Supreme Court did not reach a binding conclusion on the issue of the (sub)contractors' standing. True enough, but the Supreme Court's statements are persuasive. The Court thus concludes that it was in error to hold that the *AGC* factors bar Plaintiff from proceeding with its antitrust claim.

In sum, the Court erred in dismissing Plaintiff's antitrust claims against the Dismissed Defendants for failure to plead an antitrust injury and failure to satisfy the *AGC* factors for an appropriate antitrust plaintiff. The claims will be reinstated.

## II. RICO

Courts have looked to antitrust law to identify limits to civil RICO actions, including the requirements that a plaintiff allege (1) an "injury to business or property" that is (2) proximately caused by the defendants' predicate acts. *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 563–64 (6th Cir. 2013) (en banc). To determine whether a plaintiff's alleged injury constitutes the required "injury to business or property," a court must ask if Congress intended to authorize the recovery of damages for that injury via a civil RICO claim. *Id.* at 565. When determining whether a plaintiff has met the proximate cause requirement, the central question is whether the defendants' acts constituting the alleged RICO violation directly led to the plaintiff's injury. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). This directness requirement serves various purposes of the proximate cause requirement, such as

> avoid[ing] the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors; prevent[ing] courts from having to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries; and recogniz[ing] the fact

> that directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Bridge v. Phoenix Bond*, 553 U.S. 639, 654–55 (2008) (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 269–70 (1992)) (internal quotation marks and citations omitted). Proximate cause is a flexible concept, to be applied on a case-by-case basis. *Wallace v. Midwest Fin. & Mortg. Servs.*, 714 F.3d 414, 419 (6th Cir. 2013) (citing *id.* at 654).

The Court now concludes that by alleging a loss of DWSD contract work and a resulting loss of profits, Plaintiff has alleged an "injury to business or property" sufficient to sustain a RICO claim. The Court previously held otherwise on the grounds that under Michigan law on claims for tortious interference with a contract or business expectancy, Plaintiff has no protected property interest in DWSD contract work. However, RICO law does not support dismissing Plaintiff's claim on the grounds that Plaintiff had no entitlement to the contract work allegedly lost. As the Fifth Circuit recently explained,

> a RICO plaintiff need not demonstrate legal entitlement, a point the Supreme Court made clear in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). The plaintiffs in Bridge were "regular participants in Cook County's tax sales[,]" in which bids often ended in a tie. *Id.* at 643, 128 S.Ct. at 2135. The county would then allocate the auctioned property on a rotational basis. *Id.* at 642, 128 S.Ct. at 2135. In order to make this process fair, each bidder was permitted only one simultaneous bid. *Id.*

10

>at 643, 128 S.Ct. at 2135. The plaintiffs alleged that a competing corporate bidder had arranged for false-flag bidders to channel additional allocations. *Id.* The Bridge plaintiffs had no legal entitlement to the subject matter of the auction. Nevertheless, the Supreme Court held that "[a]s a result of petitioners' fraud, respondents lost valuable liens they otherwise would have been awarded." *Id.* at 649, 128 S.Ct. at 2139. Because the fact of loss was certain, the plaintiffs could state a RICO claim.

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 409 (5th Cir. 2015).

Applying the Fifth Circuit's reasoning in *Gil Ramirez*, the Court holds that Plaintiff has alleged a sufficient injury to business or property. In *Gil Ramirez*, the plaintiffs alleged that "their refusal to bribe [a public official] harmed their business, both in the reduction in assignments under [a government construction contract] and in [their] nonselection" for a subsequent contract. *Id.* at 407. The Fifth Circuit acknowledged that the plaintiffs had no entitlement to the award of contracts or assignment of contract work, which remained in the municipal government's discretion, but nevertheless held that the plaintiffs' alleged loss constituted a sufficient RICO injury. *Id.* at 409–10. Here, much like the plaintiffs in *Gil Ramirez*, Plaintiff has alleged the loss of a government contract award and of assignments under government contracts due to nonparticipation in a bribery scheme. The Court is persuaded that these allegations suffice to meet RICO's injury requirement.

11

The Court further holds that Plaintiff has pled a direct relation between this injury and the alleged RICO scheme. In its prior Order, the Court described Plaintiff's injury as "attenuated and indirect" and indicated that Plaintiff is not an appropriate RICO plaintiff because the DWSD, rather than Plaintiff, was more directly injured by the alleged scheme. The Court was incorrect. Plaintiff has alleged that the Dismissed Defendants engaged in a pattern of bribery and extortion with the effect of funneling DSWD contract work away from Plaintiff and other honest (sub)contractors to the Ferguson Defendants. Plaintiff's harm from this scheme was in no way contingent upon the harm suffered by the DWSD; Plaintiff would have been harmed by losing work to the Ferguson Defendants even if the Ferguson Defendants charged the DWSD fair prices.[5] In fact, it would be more accurate to say that the *DWSD's* harm was contingent, in part, upon the harm

---

[5] Plaintiff's harm is therefore distinguishable from the indirect harm in *Anza*. The plaintiff in *Anza* alleged a pattern of mail and wire fraud engaged in by the defendants to withhold tax revenue from the New York state government. 547 U.S. at 457–58. The plaintiff alleged that it was harmed by the fraud only in a manner contingent on the state's harm: the defendants' withholding of taxes from the state enabled them to lower prices, and the lowered prices caused the plaintiff to lose business. *Id.* Here, in contrast, Plaintiff has alleged that the Dismissed Defendants conspired to divert contract work to the Ferguson Defendants, directly injuring Plaintiff via the loss of contract work. *See Bridge*, 553 U.S. at 658 (explaining that because "[i]t was a foreseeable and natural consequence of [the RICO defendants'] scheme to obtain more liens for themselves that other bidders would obtain fewer liens," the alleged loss of liens was a "direct financial injury" sufficient to satisfy the directness requirement).

suffered by *Plaintiff* and other honest (sub)contractors; the DWSD would have paid less in overcharges if Plaintiff and its honest competitors had retained more work. While the harm done to the DWSD was undoubtedly of more public significance than the harm done to Plaintiff, it was not more direct. Since the central proximate cause question is the directness of the injury, rather than its significance, this is no grounds for dismissing Plaintiff's RICO claim on the pleadings.

The conclusion that Plaintiff has alleged a direct injury does not resolve the proximate cause issue—nor should it, at the pleading stage. "[A] RICO plaintiff who can show a direct injury may still lose the case if the injury does not satisfy other traditional requirements of proximate cause—that the wrongful conduct be a substantial and foreseeable cause and that the connection be logical and not speculative." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004). However, "a RICO case with a traditional proximate-cause problem (e.g., a weak or insubstantial causal link, a lack of foreseeability, or a speculative or illogical theory of damages) . . . will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *NOW v. Scheidler*, 510 U.S. 249, 256 (1994)). In its prior Order, the Court identified various difficulties Plaintiff would face in proving damages proximately caused by

the alleged scheme. However, it is not yet Plaintiff's burden to overcome those difficulties.

In sum, the Court erred in dismissing Plaintiff's RICO claim against the Dismissed Defendants for failure to plead an "injury to business or property" proximately caused by the alleged scheme. The claim will be reinstated.

### III. Other Grounds for Dismissal

In their respective motions to dismiss, the Dismissed Defendants raised various arguments for dismissal that the Court declined to address in its prior Order. The Court will address them on a later date, after an opportunity for a second hearing on the motions to dismiss.

In their response to Plaintiff's motion for reconsideration, the Dismissed Defendants raise a new argument for dismissal. They point out that Plaintiff filed a petition for restitution in the criminal RICO prosecution arising from the same scheme alleged in this case. On February 14, 2014, Judge Edmunds ruled that Plaintiff was not entitled to restitution under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. *United States v. Kilpatrick*, No. 14-mc-50163 (E.D. Mich. Feb. 14, 2014) (Order Denying Petition for Restitution). According to the Dismissed Defendants, Judge Edmunds ruled that Plaintiff's harm was not caused by the scheme, and collateral estoppel therefore bars Plaintiff from

14

establishing causation in this case. Plaintiff argues that the estoppel issue is not properly before the Court, since collateral estoppel is an affirmative defense that the Dismissed Defendants should raise in a pleading or motion. Even if the issue is properly before the Court, the Court will defer its resolution until after an opportunity for a second hearing.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion for Relief from Order or for Leave to Amend Complaint [128] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's Order [96] granting the Dismissed Defendants' motions to dismiss is **VACATED IN PART**. It is vacated with respect to the following conclusions: (1) Plaintiff failed to plead antitrust injury; (2) "other relevant factors" bar Plaintiff from proceeding with its antitrust claim; (3) Plaintiff failed to allege "injury to business or property" as required to maintain a civil RICO claim; and (4) Plaintiff failed to adequately plead the proximate cause element of a RICO claim.

**IT IS FURTHER ORDERED** that Plaintiff's antitrust and RICO claims against the Dismissed Defendants are **REOPENED**. The Court will resolve the

Dismissed Defendants' alternative arguments for dismissal after an opportunity for a second hearing.

**SO ORDERED**.


/s/Arthur  J Tarnow
Arthur J. Tarnow
Dated:  August 28, 2015               Senior United States District Judge