

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE MCCORMICK & ASSOCIATES, INC.,

    Plaintiff,

v.                                                                              Civil Action No. 12-cv-15460
                                                              Hon. Judge Arthur J. Tarnow

LAKESHORE ENGINEERING SERVICES, INC., et. al.,    Mag. Judge Mona K.
Majzoub

    Defendants.

_____/

### MOTION TO VACATE AND SET ASIDE DEFAULT JUDGMENT AND $7,477,873.83 DAMAGES AGAINST DEFENDANTS

    NOW COMES, Defendants Bobby W. Ferguson, acting pro-se, and moves pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure to vacate and set aside default judgment entered in the above cause against him and his proxy companies, Ferguson's Enterprise, Inc., and Xcell Construction services, Inc. In support, the following is respectfully submitted:

I. Factual Background:

    1.    On December 13, 2012, Plaintiff filed his Complaint against Defendants Bobby W. Ferguson and his proxy companies acting at his direction: (1) Ferguson's Enterprise, Inc., and (2) Xcell Construction Services, Inc., ("Ferguson" or "Ferguson Defendants") and twenty other Defendants. see (ECF No. 1 @ 8, para. 30).

    2.    At the time, Ferguson was a pretrial detainee at trial before this Court and detained at the Federal Detention Center Milan ("FDC Milan") located in Milan, Michigan. see United States v. Ferguson, Case No. 10-20403.

    3.    In his affidavit, Mr. Steven Coykendall, a licensed Michigan Professional Investigator, attests that "on March 18, 2013, [he] contacted the federal Correctional Institution located in Milan, MI. ["FCI Milan"] ..., spoke with Michelle ... Assistant Warden ...," who "confirmed that Bobby Ferguson was ... incarcerated at their facility ... and scheduled [him] to meet with Mr. Ferguson on Tuesday, March 19, 2013 at 10:00 a.m." (ECF NO. 28@ Pg. ID 268).

    4.    Mr. Coykendall further attests that on "March 19, 2013, at 9:45 a.m. [he] arrived at [FCI Milan] located at 4004 E. Arkona, Milan, MI. 48160 ...," for the scheduled 10:00 a.m.

appointment "to serve defendant Ferguson with Summons and Complaints relating to ... the claims alleged therein. Id.

5. Mr. Coykendall further attests that "Mr. Ferguson was PRESENTED to [him] by the correctional staff ...," and "[he] engaged in a brief conversation with Mr. Ferguson through a closed, glass security door, identified [him]self ... as a Process Server and advised him that [he] had summonses and complaints to serve upon him." Id. (emphasis added).

6. Mr. Coykendall further attests that Ferguson "verbally refused to accept service and then backed away from the security door as [Coykendall] ATTEMPTED TO HAND the documents to him through the MAIL SLOT in the DOOR ...," and "requested that his attorney accept the documents and then ... walked away." Id. "At that time the DOCUMENTS were RETRIEVED by the correctional staff and HANDED BACK to [him]." Id. (emphasis added).

7. Ferguson was never confined at FCI Milan, the facility Mr. Coykendall refers to in his affidavit; rather, as noted above, he was confined at the FDC Milan, as a pretrial detainee, not a sentenced defendant. see e.g. BOP Program Statement ("P.S.") 7331.04 (Detention Centers); https://www.bop.gov/progstat/7331_004_EN.pdf.

8. FDC Milan is located across the street from FCI Milan, both facilities have the same Warden and Associate Wardens, but a separate Superintendent is over operations at FDC Milan. BOP policy for detention centers differ from those at FCI Milan because the detention center holds pretrial detainees. Id. see also 18 U.S.C. Sec. 3142(i)(2).

9. Ferguson did not verbally or otherwise communicated with Mr. Coykendall as he was housed at FDC Milan, not FCI Milan, the facility Mr. Coykendall refers to in his affidavit of service.

10. The type of encounter Mr. Coykendall attests occurred on March 19, 2013, would have been arranged pursuant to the "special visitation" policy, which are the same as attorney visits. see BOP P.S. 5267.09, P.S. 7331.04, & P.S. 1315.07; see also https://www.bop.gov/progstat/5276_099_EN.pdf; Id. progstat/7331_004_EN.pdf; progstat/1315_007_EN.pdf.

11. The special visitation policy informs inmates of the visitor's identity and the reason for the visit (e.g. law enforcement, attorney, etc.), and inmates can decline such visits from their units without ever coming into contact with the requested visitor.

12. Ferguson was never personally or otherwise served a copy of the Summons and Complaint as required under Rule 4(e) of the Federal Rules of Civil Procedure. Id.

13. On March 28, 2013, the Summonses and Certificate of Service prepared by Coykendall purports that service of the Summons and Complaint was executed by server Coykendall on March 19, 2013. Id.@ 30.

1

14. On March 28, 2013, Plaintiff also filed a Motion to Confirm Service of the Complaint, Permit Alternate Service and Extend Summonses; these documents were returned on November 27, 2013, as undeliverable. Id.@ 31, 93.

15. BOP Mail policy requires that a "notation" explaining the reasons for such return be made on the original envelope. BOP Program Statement ("P.S.") 5800.10; see https://www.bop.gov/progstat/5800_010_EN.pdf.

16. On April 23, 2013, Plaintiff filed an Amended Complaint, which did not add new defendants, but alleged a different core of operative facts to support legal theories needed to establish standing for the RICO, Antitrust, and Due Process claims. (Id. @ 33).

17. Plaintiff filed a Certificate of Service stating Defendants Kilpatrick and Ferguson were served copies of the Amended Complaint via certified mail with return receipt cards, Id. @ 35, but personal service was not executed on Ferguson.

18. On October 1, 2013, a Certificate of Service filed stated that copies of Motion to Dismiss the Amended Complaint filed by other Defendants were mailed to Ferguson, but were returned as undeliverable on November 27, 2013. Id.@ 89, 93.

19. Throughout this same time period, Ferguson was also detained at the Dickerson Detention Facility ("Dickerson") to attend hearings to determine indigence for appointment of counsel in Case No. 10-20535 before Judge David Lawson, so he was sporadically transferred back and forth from Dickerson and Milan.

20. After he was acquitted in that case, Ferguson transferred from FOG Milan to FCI Williamsburg, his designated facility located in North Carolina; he never received any documents reportedly sent t o him at FCI Milan by Plaintiff via regular or certified mail.

21. Plaintiff had Ferguson's prison registration number (44950-039) and several notations from returned mail informing it that Ferguson was not at FCI Milan, yet Plaintiff still mailed documents to FCI Milan, i.e., the wrong address. Id. @ 90, 92, 93.

22. Defendants filed Motions to Dismiss the Amended Complaint, which the Court granted on December 20, 2013, but Ferguson, Kilpatrick, and Miller were not parties to that judgment. Id.@96.

23. On January 31, 2014, Plaintiff was Ordered to Show Cause why the Case should not be Dismissed for Want of Prosecution as to Defendants Ferguson and Kilpatrick, and directed to file a Report to the Court on its efforts to serve defendant Miller by February 14, 2014. Id. @ 99.

24. On February 5, 2014, Plaintiff filed a Request for Clerk's entry of Default against Ferguson, and on February 7, 2014, the Clerk Entered Default against him. Id. @ 102, 103, 104, 107, 108, 109.

25. On February 18, 2014, Plaintiff filed a Certificate of Service stating that the Amended Complaint was mailed to Ferguson by regular mail, but again FCI Milan was the wrong address. Id.@ 112.

26. On February 28, 2014, Plaintiff filed a Motion for Default Judgment against Ferguson with Exhibits of documents from his criminal trial, sentencing proceedings, contracts for the CM 2015 Project, and a Spreadsheet of Underpayments to Plaintiff for the CM 2015 Project. Id. @ 114, 15, 116, 117.

27. On April 11, 2014, Plaintiff filed a Certificate of Service stating that the Motion for Default Judgment served on Ferguson via regular mail addressed to the wrong address. Id. @ 121.

28. On May 1, 2014, Plaintiff filed a Supplemental Brief to its Motion for Default Judgment against Ferguson; the Certificate of Service of that document was filed on May 15, 2014, and states that documents were returned. Id.@ 124.

29. Again, under BOP Mail policy, the returned parcel provided Plaintiff a notation explaining the parcel was returned because Ferguson was no longer confined at FDC Milan. see P.S. 5800.10, supra.

30. On August 15, 2014, Plaintiff filed a Motion for Relief from the Opinion and Order dismissing the action against all defendants ("Dismissed Defendants"), except Ferguson, Kilpatrick, and Miller, and requested leave to amend the Complaint. Id. @ 128.

31. On September 19, 2014, the Dismissed Defendants responded to Plaintiffs Motion for Relief and Leave to Amend the Complaint. Id.@ 133; Plaintiff replied on September 25, 2014. Id.@ 135.

32. Meanwhile, on September 30, 2014, the Court ordered default judgment in favor of Plaintiff against defendants Kilpatrick and Miller as to Count IV. Id. @ 137.

33. On March 11, 2015, an Administrative Order reassigned the case from District Judge Cleland and Magistrate Judge Randon to District Judge Tarnow and Magistrate Judge Majzoub. Id.@ 138.

34. On August 28, 2015, Judge Tarnow granted Plaintiffs Motion for Reconsideration of the Interlocutory Order to dismissing action against the Dismissed Defendants, as to the RICO and Antitrust claims. Id.@ 139.

35. On September 11, 2015, the Dismissed Defendants filed for reconsideration of the Court's Order vacating dismissal of the action against them; that motion was granted in part and denied in part. Id.@ 142, 144.

36. Subsequently, Stipulated Orders of Dismissal with prejudice were entered as to each of the Dismissed Defendants. Id.@ 145, 146, 149, thus only the Default Defendants are still parties in this action.

37. On March 28, 2016, an Administrative Order closed the case pending appeal; on May 26, 2016, the United States Court of Appeals for the Sixth Circuit issued its order resolving the appeal. Id. @ 151.

38. On November 1, 2016, Plaintiff renewed its Motion for Default Judgment against Ferguson, and on November 9, 2016, the case was reopened. Id.@ 152, 153.

39. On December 28, 2016, the Court Ordered default judgment against Ferguson, Kilpatrick, and Miller, and Ordered Magistrate Judge Majzoub to prepare a Report and Recommendation ("R & R") on the amount of damages involved. Id. @ 154 & 155.

40. On December 29, 2016, a Notice of Determination of Damages was filed; Ferguson never received notice of this or other actions related to the case. Id. @ 156.

41. On March 29, 2018, the issued R & R finding that damages in the amount of $7,477,873.83, was derived by Plaintiff on a sufficient, competent, and logical basis; the Court adopted the R & Rand on April 19, 2016 Ordered default judgment in the amount of $7,477,873.83 Id.@ 159, 160.

42. Ferguson was granted compassionate release from prison on April 29, 2021; he has not been able to confer with opposing counsel since his release and now moves for relief from judgment.

43. In September of 2021, Plaintiff, McCormick died and is the only Plaintiff in this matter.

44. Ferguson is still subject to the April 19, 2016 default judgment in the amount of $7,477,873.83 entered by the Court, which as noted above lacked proper service of process. Id. @ 159, 160.

II. Memorandum of Law In Support:

Standard of Review:

"Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." O.J. Dist., Inc. v. Hornell Brewing Co., Inc., 340 F.3d 345, 353 (CA 6, 2003). If the defendant was not properly served, the court lacks jurisdiction over the individual, the default judgment is void, and the court must set the judgment aside under Rule 60(b)(4). see Antoine v. Attas Turner, Inc. 66 F.3d 105, 108 (CA 6, 1995) ("A judgment is void under

4

60(b)(4) "if the court that rendered it lacked jurisdiction of ... the parties, or acted in a manner inconsistent with due process of law."). The court may set aside an entry of default for good cause, and ... a final default judgment under Rule 60(b)." see Rule 55(c), Fed.R.Civ.P. The court must apply Rule 60(b) "equitably and liberally ... to achieve substantial justice." United Coin Meter Co. v. Seaboard Costal LineR.R., 705 F.2d 839, 844-45 (CA 6, 1983).

In Coin Meter Co., the court articulated three factors to consider in deciding Rule 60(b) motion, whether (1) plaintiff will be prejudiced, (2) the defendant has a meritorious defense, and (3) if culpable conduct of the defendant led to the default. Coin Meter Co., 705 F.2d 2 845. The most critical factor is whether the culpable conduct of the defendant leads to the default. Id. see Also United States v. Piesco, 2012 U.S. Dist. LEXIS 71020 (E.D. Mich., May 4, 2012). In this case, Plaintiff misrepresented facts to fabricate a narrative that default was due to Ferguson's culpable conduct. However, the need for analyzing the United Coin equitable factors is not necessary where due to lack of service the judgment of default is void under Rule 60(b)(4). see Antoine v. Atlas Turner, Inc., 66 F.3d 105, 108 (CA 6, 1995); see also Cunningham v. Enagic USA, Inc., 2019 U.S. Dist. LEXIS 185075 (M.D. Tenn., Sept. 10, 2019). The facts evincing deficient service are inextricably intertwined with those that satisfy the Coin Factors, so they are addressed together.

I. ARGUMENTS:

(i). Improper Service of Original Complaint:

Rule 4(c) of the Federal Rules of Civil Procedure provides that "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint." Rule 4(e) provides that service of an individual within a judicial district of this Court can be executed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or ... (2)(A) delivering a copy of the summons and of the complaint to the individual personally ..." Rule 4(e), Fed. R. Civ. Proc.

Under Michigan Law, the summons and complaint may be served on an individual by "delivering a summons and a copy of the complaint to the defendant personally ..." MCR 2.105(A)(1). "Service is made when the defendant acknowledges receipt of the mail." Id. Private Corporations are served when the "summons and a copy of the complaint" is served "on an officer or the resident agent." MGR 2.105(0).

(ii). Server Coykendall's Misrepresentation of Service:

On December 13, 2012, Plaintiff filed the original complaint. (ECF No. 1). On that same date, the Court issued summons for all defendants named in the complaint. Id. # 2. On March 28, 2013, Plaintiff filed a Certificate of Service of the Summonses for the Ferguson Defendants. Id.# 28. The server, Mr. Coykendall's affidavit was affixed to the Certificate of Service. Id. Mr. Coykendall attests that on "March 18, 2013, [he] contacted [FCI Milan] ... spoke with Michelle ... the Assistance Warden ...," who "confirmed that Bobby Ferguson was currently incarcerated at their facility." (ECF No. 28, pg. ID 268, para. 1). Mr. Coykendall "explained to [Michelle] that

5

[he] would be acting as a Process Server to serve Bobby Ferguson with legal documents ...," and that "she then scheduled [him] to meet with Mr. Ferguson on Tuesday, March 19, 2013 at 10:00 a.m." Id. Mr. Coykendall further attests that on "March 19, 2013 at 9:45 a.m. [he] arrived at [FCI Milan] located at 4004 E. Arkona, Milan, MI. 48160. Id.@ para. 2. He then attests that "Mr. Ferguson was presented to [him] by correctional institution staff ...," and that he "engaged in a brief conversation with Mr. Ferguson through a closed, glass security door as [he] attempted to hand the documents to him through the provided mail slot in the door." Id. He continues stating that '[Ferguson] requested that his attorney accept the documents and then walked away." Id. He concludes that '[a]t that time the documents were retrieved by correctional institution staff and handed back to [him]." Id.

Mr. Coykendall's declaration is demonstrably false. First, if Coykendall had contacted the facility at FCI Milan, they would have advised him that Ferguson was confined at FDC Milan, the detention center across the street and that he needed to confer with staff at that facility to schedule a "special visit" with Ferguson. see e.g. United States v. Weaver, 2020 U.S. Dist. LEXIS 86042, * 10 (E.D. Mich, May 15, 2020)("Milan is both a federal correctional institution (i.e. FCI Milan) and a federal detention center (i.e. FDC Milan). FCI Milan and FDC Milan are separate buildings."). This Court can take judicial notice of this fact, pursuant to Rule 201(b)(1) of the Federal Rules of Evidence. see also United States v. Amawi, 2008 U.S. Dist. LEXIS 26097, * 3, N. 2 (N.D. Ohio, Aug. 28, 2008)("1 took judicial notice that FDC Milan and FCI Milan are adjacent to each other."); Simmons v. United States, 974 F.3d 791, 794 (CA 6, 2020)(same).

Second, Coykendall attests that, "Michelle" identified herself as an "Assistant Warden" at FCI Milan, but it is doubtful that she would have done so by giving him her "FIRST NAME." Furthermore, the BOP does not use the title "ASSISTANT Warden" -- rather the proper designation is "ASSOCIATE Warden". see BOP Program Statement ("PS") 1120.18 (Delegating Authority in the Absence of the Chief Executive Officer); https://www/bop.gov/progstat/1120_018_EN.pdf. Third, appointments for such matters are arranged as "special visits". see BOP P.S. 5267.09;https://www.bop.gov/progstat/5267_009_EN.pdf. Because Ferguson was a pretrial detainee, Mr. Coykendall would have been directed to the detention center, FDC Milan. see 28 CFR Part 551.120 (special visits/Pretrial); see also https://www.bop.gov/progstat 7331_004_ EN.pdf. Fourth, special visits are conducted in separate visiting areas also used for attorney visits. Id. Had a special visit occurred, Ferguson would not have been standing behind a glass security door, and such doors have "wickets" that must be opened with a key by the guard, not "mail slots." (ECF No. 28, Pg. ID 268, para. 2). Simply put, Mr. Coykendall would have been taken to a special visiting area, then prison staff would have escorted Ferguson to that area for a CONTACT VISIT with Coykendall. see https://www.bop.gov./progstat/5267_009_EN.pdf.

(iii). No Culpable Conduct:

These facts also reveal there was no culpable conduct by Ferguson. Again, Coykendall attests that "Mr. Ferguson was presented to [him] by the correctional institution staff ...," and he "engaged in a brief conversation with Mr. Ferguson through a closed, glass security door ...,

6

identified [himself] ... as a Process Server and advised [Ferguson] that [he] had Summonses and Complaints to serve upon him." (ECF No. 28, Pg. ID 268, para. 2). As noted, this is not how special visits are conducted. Coykendall fabricated this narrative to support a claim that Ferguson refused or evaded service.

Specifically, the very next thing Mr. Coykendall states is that '[Ferguson] verbally refused to accept service and then backed away from the security door as [he] attempted to hand the documents to him through the ☐ mail slot in the door ...," and that "[Ferguson] requested that his attorney accept the documents and then he walked away." Id.

This narrative is false. First, when special visits are arranged, before the visitor arrives, the inmate knows the visitor's identity and the reasons for the special visit. see https://www.bop.gov/progstat/5267_009_EN.pdf; Id. @7331_004_EN. pdf. If Mr. Coykendall actually had arranged a special visit scheduled for March 19, 2013, Ferguson would have known his identity and the reasons for the visit, so he could have declined the visit without even coming into conduct with Mr. Coykendall. Id.

Second, the final statements in Mr. Coykendall's affidavit further reveal the fabrication involved. He attests that after he had "attempted to hand the documents to [Ferguson] through the D mail slot in the door ..., the documents were retrieved by ☐ correctional D staff and handed back to [him]." (ECF No. 28, Pg. ID 268 @ para. 2). If Mr."(Ferguson) backed away from the security door as [Coykendall] attempted to hand (Ferguson] the documents ... through the D mail slot in the door(,)" Id., then Coykendall still had POSSESSION of the documents and there was NO NEED for "the documents [to be] retrieved by the correctional D staff and handed back to [Coykendall]." Id. It defies logic to conclude Coykendall needed someone to hand back documents to him that he still possessed. This contradiction evinces that Coykendall's narrative is fabricated to support a claim of culpable conduct.

(iv). Deficient Affidavit:

Mr. Coykendall's Affidavit is deficient; the notary section omits a required component. It bears the notary's signature, venue, and extent of commission, but is undated. Id. This deficiency undermines the credibility and weight of the information allegedly attested to under oath. See Welch v. Level 3 Communs, LLC, 2017 U.S. Dist. LEXIS 85975, * 2 (E.D. Mich., March 9, 2017)("Unsigned affidavits do not comply with Fed. R. Civ. P. 56(e)."); Brooks-Simon v. Cardi, 2019 U.S. Dist. LEXIS 230270 (E.D.N.Y, December 9, 2019)(recommending dismissal due to deficient affidavit of service).

(v). Improper Service of Amended Complaint:

On March 28, 2013, Plaintiff filed a motion for alternative service. (ECF No. 31). The Returns of Service/ Affidavit of Process Server by Coykendall was filed as Exhibit C to certify service of the original complaint. Id. On April 23, 2013, Plaintiff filed an Amended Complaint. (ECF No. 33). Filing the Amended Complaint superseded the original complaint, which by

7

Operation "no longer performed any function in the case." see B & H Medical LLC v. ABP Admin., Inc., 526 F.3d 257, 268 n. 8 (CA 6, 2008)(quoting 6 Charles Alan Wright, Arthur R. Miller & May Kay Kane, Federal Practice and Procedure [Sec.] 1476 (2d ed. 1990)(stating that "[a] pleading that has been amended under Rule 15(a) supersedes the pleading it modifies" and that '[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case."). Under the pretense that the original complaint was properly served, Plaintiff relied on Rule 5(a)(2), as if Ferguson was in default, and Plaintiff served the Amended Complaint on Ferguson via Certified mail Return Receipt. (ECF No. 35). That service was therefore improper.

Specifically, Ferguson was never properly served the original complaint. Therefore, personal service of the Amended Complaint was required, pursuant to Rule 5(a)(2). see Mercer v. Csik, No. 08-11443; 2010 U.S. Dist. LEXIS 64777 (E.D. Mich, June 20, 2010). Plaintiff could not rely on Rule 5(a)(2), as Ferguson was not in default, because he was never served the original complaint. Moreover, even if, Ferguson was in default, the Amended Complaint raises operative facts different from the core of operative facts in the original complaint, so personal service of the Amended Complaint was still required pursuant to Rule 5(a)(2), and Rule 4(e) of the Federal Rules of Civil Procedure.

(vi). Plaintiff's Misrepresentations:

The Certificate of Service of the Amended Complaint also misrepresents nature of service. The Return Receipt Card was filed on May 1,, 2013, but does not indicate service was accepted. (ECF No. 35). The BOP Certified Mail policy provides that "unit staff must sign for all receipt mail" and "shall have the inmate sign a receipt log prior to delivering the receipt type mail." see P.S. 5800.10, supra. If the Amended Complaint was accepted, unit staff signature would be reflected on the return receipt, but it is not. Id. When certified mail is returned, it is recertified with a notation of why it was returned.

Two other Certificates of Service of documents sent to Ferguson by regular mail were still addressed to FCI Milan, not FDC Milan. (ECF@ 11/05/2013 & 11/27/2013). The latter certificate was returned as "undeliverable". Again, when documents are returned BOP mailroom staff places "an appropriate notation ... on the original envelope to inform ... sender why the mail was not delivered." see P.S. 5800.10, supra.; Gray v. Licon-Vitale, 2021 U.S. Dist. LEXIS 6075, * 4 (D. Conn., Jan. 15, 2021)("Mail sent to D plaintiff at FCI Danbury address ... returned with a notation that ... plaintiff no longer ... confined there."). Simply put, Plaintiff knew Ferguson was not confined at FCI Milan, but still sent documents there to fabricate a record of proper service to this Court to support its efforts to get a default judgment needed to sustain its civil Action. Moreover, throughout the time periods Plaintiff alleges the original and amended complaints were served upon Ferguson, he was sporadically housed at FDC Milan and the Dickerson Facility to appear in this Court before the Honorable David Lawson to determine whether he was indigent and entitled to appointed counsel for retrial in that case. (United States v. Ferguson, Case No. 10-20535 9E.D. Mich. 2010). This is another explanation why notations

8

on returned documents informed Plaintiff that the Amended Complaint was undeliverable because Ferguson was not confined at the facility.

Plaintiff is not entitled to default judgment when "service is made at the wrong address, and[,] [as here,] evidence [does] not establish merits of [Plaintiff's] claim." Cohen v. Kallok, {In re JRA 222, Inc.) 365 B.R. 508, 48 Bankr. Ct. Dec. (LPR) 26 (Bankr. E.D. Pa. 2007). A default judgment is invalid unless the Court has proper jurisdiction. Citizens Bank v. Parries, 376 F. App'x. 496, 501 (CA 6, 2010)("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court including entry of [a] defaultjudgment.")(citing Kroger Co. v. Malease Food Corp., 487 F.3d 506,510 (CA 6, 2006).

Importantly, because Ferguson never received proper notice of this action, "the presumption is that Plaintiff bears the burden of proof when service is challenged after default judgment has been entered." Cunningham, 2019 U.S. Dist. LEXIS* 9 (citing Metro Alloys Corp. v. State Metals Indus., Inc., 416 F.Supp. 2d 561, 563 (E.D. Mich. 2006). "This allocation flows from the general presumption that a plaintiff must carry throughout the litigation the burden of showing that he is properly in the court." Id. (quoting McNutt v. General Motors Acceptance Corp. of Indiana, Inc. 298 U.S. 178, 189; 56 S.Ct. 780; 80 L.Ed.2d 1135 (136)).

Accordingly, pursuant to Rule 60(b)(4), the default judgment entered against Ferguson on December 28, 2610, and the Order adopting the Report and Recommendation for damages in the amount of $7,477,873.83, entered on April 19, 2018, are void, and relief from judgment is warranted.

(vii). Remaining COIN Factors:

(a). Plaintiff is not Prejudiced:

Ferguson further submits that "any prejudice to [Plaintiff] by having to prove its case in accordance with the rules of procedure is not the kind of prejudice that can defeat a motion to set aside a default judgment." Cunningham, 2019 U.S. Dist. LEXIS"* 10-11 (citing Dassault Systemes, SA v. Childress, 663 F.3d 832. 842 (CA 6, 2011)(delay and increased cost from having to actually litigate a dispute are not sufficient prejudice). Moreover, as noted in the facts above, Plaintiff died in September of 2021, hence can no longer answer to Ferguson's meritorious defense.

(b). Meritorious Defense:

To establish the existence of a "meritorious defense" the defendant does not have to demonstrate the likelihood of success, but simply must state a defense that is "good law". Delphi Inv. Group v. Perry County Hosp, 2020 U.S. Dist. LEXIS 192950 (M.D. Tenn. Sept. 17, 2020)(quoting Southern Elec. Health Fund v. Bedrock Servs, 146 Fed. Appx 772, 777 (CA 6, 2005). The primary consideration to this inquiry is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." Id. The factual basis supporting Ferguson's meritorious defenses are in the record.

During the hearing on Plaintiff's Default Judgment Motion On April 23, 2014, the Court "expressed skepticism that Plaintiff's Antitrust and RICO claims against the Defaulted Defendants could survive given a December 20, 2013 Order in which the Court dismissed Plaintiff's Antitrust and RICO claims against the other defendants in this matter ("The Dismissed Defendants")." (ECF No. 159@ Pg. ID 4256)(citations omitted).

The December 20, 2013 Order did not include dismissal of Plaintiff's Equal Protection Claim. (ECF No. 96). Therefore, "on September 30, 2014, the Court granted Plaintiffs Motion for Entry of Default Judgment against [Ferguson]" and the other "Defaulted Defendants on Plaintiff's Equal Protection claim and deferred ruling on the motion with respect to Plaintiff's Antitrust and RICO claims until after the resolution of Plaintiff's Motion for Relief." (ECF No. 159@ Pg. ID 4256-57). On August 28, 2015, the Court "reinstated Plaintiffs Antitrust and RICO claims against the Dismissed Defendants." (ECF No. 139).

By those rulings, the Court tacitly retained jurisdiction, so Plaintiff renewed its Motion for Default Judgment against Ferguson and the other Defaulted Defendants on November 1, 2016. (ECF No. 152). On December 28, 2016, the Court granted Plaintiff's motion and advised that it [would] enter the default judgment after a hearing has been held to determine the amount of damages[.]" (ECF No. 154 @ 2, 3). The matter was referred to Magistrate Judge Majzoub, who on March 29, 2018, issued a Report and Recommendation ("R & R") for Default Judgment as to Ferguson and for damages in the amount of $7,477, 873.83. (Id.@ 155, 159). On April 19, 2018, the Court adopted the findings in the R & Rand Ordered accordingly. Id.@ 160.

The problem is that before the R & R was issued, the Dismissed Defendant who were reinstated in the action, were again by Stipulated Order dismissed from it with prejudice. (ECF Nos. 145, 146, 149). In effect, this put Ferguson back in the same position that the Court "expressed skepticism" about with regard to whether Plaintiff's Antitrust and RICO claims against Ferguson and the other Defaulted Defendants could survive without the Dismissed Defendants being parties to claims alleged in the Complaint. (Id. @ 159 @ Pg. ID 4256-57). Ergo, the Dismissed Defendants support the meritorious defenses argued below on each of claims alleged in the Amended Complaint.

(i). Equal Protection Claim:

Plaintiff's Equal Protection claim is unfounded. Specifically, to state a claim under Section 1983, Plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." West v. Atkins, 487 U.S. 72, 78 (1988). For conduct to fall within scope of Section 1983, the defendant charged with a civil rights violation must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions. see e.g. DeBauche v. Trani, 191 F.3d 499, 506-07 (CA 4, 1999); Polk County v. Dodson, 454 U.S. 312, 312-18 (1981) (A person acts under color of law "only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law.").

10

The Amended Complaint alleges that Ferguson and the Defendant Contractors were engaged in a "bid rigging scheme." (ECF No. 33, Pg. ID 315-18, para. 1-7). However, the Defendant Contractors are no longer parties in this action. Dismissal of the claims against them with prejudice undermines the legal allegations in the Amended Complaint, because Ferguson's "private activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." Philips v. Pitt Cty. Men'l Hosp, 572 F.3d 176, 181 (CA 4, 2009). Ferguson's alleged actions with the Defendant Contractors are no longer tenable as the alleged conduct of those defendants have been dismissed with prejudice. As a result, the Court no longer can consider the legal conclusion regarding Equal Protection as true. Ergo, Plaintiff lacks constitutional standing to bring an Equal Protection claim against Ferguson, who did not act under the color of state law. West v. Atkins, supra.

(ii). RICO Claim:

The Amended Complaint alleges Ferguson participated in an association-in-fact ("AIF") enterprise. (ECF No. 33@ Pg. ID 338, para. 74). An AIF enterprise "is a group of persons associated together for a common purpose of engaging in a course of conduct." Compound Prop. Mgmt, LLC. v. Build Realty, Inc, 462 F.Supp.3d 839, 855 (S.D. Ohio, 2020)(quoting Boyle v. United States, 556 U.S. 938,946; 129 S.Ct. 2237; 173 L. Ed. 2d 1265 (2009)). The structure of such an enterprise "must have at least three ... features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. (quoting Boyle, 556 U.S. @ 946). The group "must function as a continuing unit and remain in existence long enough to pursue a course of conduct." Id.

The Court dismissed with prejudice the RICO and all other claims alleged in the Amended Complaint against all Defendants except Kilpatrick, Miller, and Ferguson. This undermines the legal conclusion that Ferguson participated in the alleged enterprise. Specifically, the enterprise element requires that the group "must function as a continuing UNIT AND REMAIN in existence long enough to pursue a course on conduct." Id. (emphasis added). As a subcontractor, Ferguson's contractual relationships with various general contractors, some of whom were named in the Amended Complaint, to perform services on projects named in the Amended Complaint, and other projects not at issue, does not, as a matter of law, constitute a showing that he participated in the AIF enterprise alleged in the Amended Complaint. Indeed, the Dismissed Defendants are no longer part of the allegations, the Amended Complaint can only speculate that Ferguson took part in the enterprise's affairs; however, without the Dismissed Defendants, there is no longer a group as alleged in the Amended Complaint to comprise the AIF, so there is no enterprise.

Accordingly, Plaintiff lacks standing because nothing in the Amended Complaint shows that Ferguson's conduct was the proximate cause of the alleged injuries to McCormick/Plaintiff's business. see Ariza v. Ideal Steel Supply corp., 547 U.S. 451,461; 126 S.Ct. 1991; 164

11

L.Ed.2d 720 (2006) (holding that the alleged violation of federal or state law must directly lead to the plaintiff's injuries).

(iii). Antitrust Claim:

"[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement, [the Court] must dismiss it as a matter of law." NicSand, Inc. v. 3M Co., 507 F.3d 442,450 (CA 6, 2007). Rather than focus on each of the five factors used to determine whether Plaintiff has antitrust standing, Ferguson points to the fact that the dismissal, with prejudice, of the claims against the Dismissed Defendants negates the legal conclusion alleged in the Amended Complaint that Ferguson's private negotiations as a subcontractor with various general contractors caused a "market-wide injury." (ECF No. 33@ Pg. ID 315-18).

Antitrust law protect "competition", not competitors." Brown Shoe Co. v. United States, 370 US. 294, 320 (1962). An injury "causally related to an antitrust violation ... will not qualify as "antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny." Atl. Richfield Co. v. USA Petroleum co., 495 U.S. 328, 334 (1990). The Sixth Circuit has been reasonably aggressive in suing the antitrust injury doctrine to bar recovery." Valley Prods. Co., Inc. v. Landmark, A Div. of Hosp. Franchise Sys. Inc., 128 F.3d 398,403 (CA 6, 1977). The Amended Complaint states that '[a] integral feature of the secret bid rigging scheme was the placement of a Ferguson entity into the project as either a partner with the bidder and/or a subcontractor." (ECF No. 33, Pg. ID 371 @ para. 201). "This was the condition to participate in the scheme, as it was the primary means by which the secret scheme was carried out and concealed, through work allocation and payment from the Contractor Defendants to the Ferguson entities and others." Id. Dismissal of these ALLEGATIONS against the Contract Defendants, with prejudice, renders them hollow to implicate Ferguson.

Accordingly, the default judgment entered by the Court was not the result of Ferguson's culpable conduct, but was due to Plaintiff's failure to execute proper service of process. That alone makes the default void for lack of personal jurisdiction over Ferguson, pursuant to Rule 60(b)(4). Ferguson has also satisfied the COIN Factors for equitable relief underthe Rule 60(b)(1) and (3), due to the misrepresentations by Plaintiff regarding service of process, and the fabrication of facts that misled the Court to believe service was properly executed and default judgment against Ferguson was appropriate. In addition, Plaintiff is now deceased and unable to respond to the merits of Ferguson's defense.

## CONCLUSION

WHEREFORE, for the reasons above, Defendant respectfully request the Court vacate the Orders of Default Judgment entered on December 28, 2016 and on April 19, 2018, as to the $7, 477, 873.83 for damages, and schedule this matter for disposition on the merits.

Dated: 2/25/22

Bobby W. Ferguson
Defendant/Pro-se
18944 Bretton Dr.
Detroit, MI. 48223

13

## CERTIFICATE OF SERVICE

    The undersigned certifies that on the date below a true and correct copy of the foregoing was served by First Class U.S. Mail properly addressed to the following party:

Robert Lahiff
Attorney for Plaintiff
607 Shelby -- 7th Floor
Detroit, MI. 48226

Date: 2/25/22

/s/ *Bobby W. Ferguson*
Bobby W. Ferguson
18944 Bretton Dr.
Detroit, MI. 48223

14

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date below a true and correct copy of the foregoing was served by First Class U.S. Mail properly addressed to the following party:

Robert Lahiff
Attorney for Plaintiff
607 Shelby -- 7th Floor
Detroit, MI. 48226

Date: 2/25/22

/s/ *Bobby W. Ferguson*
Bobby W. Ferguson
18944 Bretton Dr.
Detroit, MI. 48223

14

