UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE MCCORMICK AND ASSOCIATES, INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>LAKESHORE ENGINEERING SERVICES, INCORPORATED, BOBBY W. FERGUSON, *et al.*,<br><br>Defendants. | Case No. 12-15460<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING FERGUSON'S MOTION TO
SET ASIDE THE DEFAULT JUDGMENT [161]**

Before Kwame Kilpatrick became Mayor of Detroit in 2002, Willie McCormick and Associates did underground water and sewer line work for the Detroit Water and Sewerage Department. But, according to McCormick, after Kilpatrick became mayor and was appointed special administrator for DWSD, he began ensuring that his longtime friend, Bobby Ferguson, and Ferguson's companies were awarded the underground water and sewer line work for DWSD. So in 2012, McCormick filed this lawsuit against Kilpatrick, Ferguson, and a host of other entities and individuals alleging violations of the federal antitrust laws and the Racketeer Influenced and Corrupt Organizations Act.

As this case is nearing 10 years old, it has a very long procedural history. Suffice it to say that Ferguson never appeared to defend this suit, and in time, a default judgment of over $7 million was entered against Ferguson and in favor of

McCormick. Recently, Ferguson has moved to set aside that default judgment. For the reasons that follow, the Court will deny Ferguson's motion.

## I.

### A.

Through the first 10 years of its operation, McCormick often won bids to perform underground water and sewer line work for the Detroit Water and Sewerage Department. (ECF No. 33, PageID.326–327.) But, says McCormick, things changed when Kwame Kilpatrick became Mayor of Detroit in 2002. (ECF No. 33, PageID.328.) At that time, the DWSD was under a federal consent decree, and the federal court appointed Kilpatrick as the Special Administrator of DWSD. (ECF No. 33, PageID.328.) According to McCormick, as both Mayor and Special Administrator, Kilpatrick wielded great power over DWSD and "had authority to approve, deny and amend DWSD contracts." (ECF No. 33, PageID.329.)

McCormick says that Kilpatrick abused this power to aid his longtime friend Bobby Ferguson, which, in turn, caused McCormick to lose valuable contracts. As just one example, McCormick points to the CS-1368 contract. (ECF No. 33, PageID.340.) McCormick explains that in November 2001, the DWSD Board approved Inland Waters as the CS-1368 contractor and McCormick as one of the subcontractors. (ECF No. 33, PageID.341.) In fact, "McCormick was the only underground water and sewer line subcontractor who was both a Detroit Based and Minority Business Enterprise." (*Id.*) But after Kilpatrick came to power, he allegedly refused to approve or held up the process of moving forward with CS-1368,

2

"because a Ferguson company was not one of the approved minority underground water and sewer subcontractors." (ECF No. 33, PageID.343.) According to McCormick, Kilpatrick and others engaged in secret meetings with Inland Waters representatives where it was decided that Kilpatrick would allow CS-1368 to go forward if Inland Waters agreed to remove McCormick in favor of Ferguson Enterprises and to pay bribes to Ferguson and Kilpatrick. (ECF No. 33, PageID.343.) With add-on work, $138 million was paid under the CS-1368 contract; Ferguson's company received almost $25 million. (ECF No. 33, PageID.347.) McCormick says that but for Kilpatrick and Ferguson's unlawful scheme, it would have received the work performed by Ferguson Enterprises under CS-1368 (and other contracts).

At some point, federal prosecutors got wind of the bid-rigging scheme. And in 2010, a federal grand jury indicted Kilpatrick, Ferguson, and others for RICO conspiracy, extortion, and other crimes. (ECF No. 33, PageID.330.) In 2013, Ferguson was convicted of RICO conspiracy, extortion, and bribery, and sentenced to 21 years in prison. *See United States v. Ferguson*, No. 10-20403, 2018 WL 1071743, at *1 (E.D. Mich. Feb. 27, 2018).

## B.

In late 2012, McCormick initiated this civil suit against Kilpatrick, Ferguson, Ferguson's companies, and a host of other companies and individuals. (*See* ECF No. 1.) McCormick alleged that Ferguson committed RICO and federal antitrust violations. (ECF Nos. 1, 33.) At the time the suit was filed, Ferguson was in pretrial

3

detention on the criminal charges. He was being held at a federal institution in Milan, Michigan.

In March 2013, Steven Coykendall, a process server, attempted to serve McCormick's complaint on Ferguson. According to Coykendall's sworn affidavit, he called "the Federal Correctional Institution located in Milan, MI." (ECF No. 28, PageID.268.) Coykendall stated that an "Assistant Warden" "confirmed that Bobby Ferguson was currently incarcerated at their facility." (*Id.*) Coykendall told the assistant warden that he was acting as a process server to serve Ferguson with legal documents, and she scheduled Coykendall to meet with Ferguson the following day. (*Id.*)

In his affidavit, Coykendall further averred that the next morning, March 19, 2013, he arrived at the "Federal Correctional Institution located at 4004 E. Arkona, Milan, MI 48160." (ECF No. 28, PageID.268.) He recalled, "Mr. Ferguson was presented to me by the correctional institution staff. I engaged in a brief conversation with Mr. Ferguson through a closed, glass security door. I identified myself to Mr. Ferguson as a Process Server and advised him that I had Summonses and Complaints to serve upon him." (*Id.*) Coykendall continued, "[Ferguson] verbally refused to accept service and then backed away from the security door as I attempted to hand the documents to him through the provided mail slot in the door." (*Id.*) And said Coykendall, "He requested that his attorney accept the documents and then he walked away. At that time the documents were retrieved by the correctional institution staff and handed back to me." (*Id.*)

4

The next month, April 2013, McCormick filed an amended complaint. (ECF No. 33.) A certificate of service indicates that McCormick sent the amended complaint to Ferguson at a post-office box for FCI Milan. (ECF No. 35, PageID.614.) The amended complaint was sent by certified mail. The accompanying green card was accepted and signed for by someone at the prison, although not Ferguson. (*See* ECF No. 35-1, PageID.616.)

Shortly before filing its amended complaint, McCormick filed a motion relating to service of two sets of defendants: Ferguson (and his companies) and Derrick Miller. (ECF No. 31.) McCormick indicated that it was tracking Miller in Virginia but had, to date, been unable to personally serve him. McCormick thus sought an order permitting service on Miller by alternate means (e.g., mail and publication in a newspaper). (ECF No. 31, PageID.291, 294.)

As to Ferguson, McCormick's motion sought different relief. McCormick argued that while Rule 4 required personal service, personal service did not mean "in hand" service. (ECF No. 31, PageID.289.) In McCormick's view, Coykendall's affidavit showed that he had offered the summons and complaint to Ferguson and left it in an area that Ferguson physically controlled, which, according to McCormick, counted as personal service under the law. (*Id.*) McCormick thus asked the Court to issue an order "confirming" that it had effectuated personal service on Ferguson. (ECF No. 31, PageID.291.) In the alternative, McCormick asked the Court for leave to serve Ferguson by alternate means (similar to the relief it requested for Miller). (ECF No. 31, PageID.292–293.)

5

In November 2013, Judge Robert H. Cleland, to whom this case was then assigned, entered an order on McCormick's motion. (ECF No. 90.) As to Miller, Judge Cleland permitted McCormick to serve him by alternate means. (ECF No. 90, PageID.3307.) As to Ferguson, Judge Cleland explained, "According to an affidavit provided by the process server, the process server attempted to pass the summons and complaint to Ferguson through a mail slot, but Ferguson refused service and told the process server to serve his attorney without identifying who his attorney is." (ECF No. 90, PageID.3306.) Judge Cleland continued, "Plaintiff sent an email to Gerald Evelyn, an attorney who represented the Ferguson Entities in litigation brought by the City of Detroit, but Evelyn did not respond to confirm whether or not he was authorized to accept service on behalf of the Ferguson Entities." (*Id.*) Referring to a certificate of service of a host of filings (*see* ECF No. 89), Judge Cleland noted that while McCormick's motion was pending, it had "filed a certificate of service, reporting that . . . it effected service on Ferguson by certified mail at the Federal Correctional Institution in Milan." (ECF No. 90, PageID.3307). Then citing case law that a defendant cannot avoid service by physically refusing to accept the summons and that service can be effected by leaving papers near the defendant, Judge Cleland indicated that he was "inclined" to find that Coykendall's "service was valid, despite Ferguson's attempt to refuse or evade service." (ECF No. 90, PageID.3307.) "At a minimum," Judge Cleland explained, "[Ferguson's] refusal constitutes a valid basis to extend the summons. And given that service was eventually effected by certified mail, the court finds that Ferguson is on proper

6

notice of this lawsuit and will be deemed served." (ECF No. 90, PageID.3307.) Thus, Judge Cleland ordered "that service is deemed to have been properly effected on the Ferguson Entities." (ECF No. 90, PageID.3307–3308.)

Skip ahead to 2014; Ferguson still had not filed an appearance in this suit. So McCormick requested a default, and in February 2014, the Clerk of Court entered a default against Ferguson and his companies. (ECF Nos. 102, 103, 104.) McCormick followed up with a motion for default judgment. (ECF No. 114.)

McCormick twice tried to give Ferguson notice of its efforts to obtain a default judgment. McCormick initially sent copies of the Clerk's entry of default and its motion for default judgment to Ferguson using the FCI Milan post-office-box address. But these were returned marked "Return to Sender[.] Refused[.] Unable to Forward" or "Not at Institution." (ECF No. 112, PageID.3404; ECF No. 118, PageID.3730, 3735.) So McCormick tried again: it sent copies of the default, motion for default judgment, and the notice of hearing on that motion to Ferguson at the Wayne County Jail. (ECF No. 121, PageID.3751.) These were returned with a "Refused" sticker on the envelope. (ECF No. 121, PageID.3756, 3762.)

As it turned out, Judge Cleland never decided whether a default judgment against Ferguson was warranted. (*See* ECF No. 137.) Fairly early on in this case, Judge Cleland had dismissed the RICO and antitrust claims against the non-defaulted defendants because, in his view, McCormick lacked standing to pursue those claims. *See Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc.*, No. 12-15460, 2013 WL 6713999, at *7, 10 (E.D. Mich. Dec. 20, 2013). Consistent

7

with that ruling, at the hearing on McCormick's motion for default judgment, Judge Cleland expressed reluctance about entering a default judgment on the RICO and antitrust claims. (ECF No. 129, PageID.3844, 3848.) But before Judge Cleland finally decided one way or the other, the case was reassigned to Judge Arthur J. Tarnow. (ECF No. 138.) Judge Tarnow did not share Judge Cleland's concerns about standing and entered an order vacating in part Judge Cleland's order dismissing the RICO and antitrust claims. *Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc.*, No. 12-15460, 2015 WL 5093785, at *1 (E.D. Mich. Aug. 28, 2015). An interlocutory appeal was taken on this issue, but it appears that the appeal was ultimately dismissed. (*See* ECF Nos. 148, 150, 151.)

Following the appeal, in November 2016, McCormick was finally able to circle back to seeking a default judgment against Ferguson. (ECF No. 152.) For Ferguson's alleged violations of RICO and the antitrust laws, McCormick sought actual damages of about $2.5 million and trebled damages of about $7.5 million. (ECF No. 152, PageID.4128.) The docket does not reflect what efforts, if any, McCormick took to provide a copy of this motion to Ferguson.

In December 2016, Judge Tarnow entered a short order providing that he would "enter default judgment against all Defendants after a hearing has been held to determine the amount of damages." (ECF No. 154, PageID.4238.) Judge Tarnow referred the hearing on damages to a magistrate judge.

In April 2018, Judge Tarnow accepted the magistrate judge's damages recommendation. In particular, he "ORDERED that default judgment be entered in

8

favor of Plaintiff and against Defendants Kwame Kilpatrick, Bobby W. Ferguson, Ferguson's Enterprises, Inc., Xcel Construction Services, Inc., and Derrick A. Miller, in the amount of $7,477,873.83." *Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc.*, No. 12-15460, 2018 WL 1875628, at *1 (E.D. Mich. Apr. 19, 2018).

## C.

In 2021, Kilpatrick and Ferguson were released from prison. In particular, then-President Donald Trump commuted Kilpatrick's 28-year sentence. *United States v. Ferguson*, 536 F. Supp. 3d 139, 141 (E.D. Mich. 2021). And Judge Nancy G. Edmunds, who had presided over the criminal proceedings against Kilpatrick and Ferguson, granted Ferguson compassionate release. *See id.* at 145. She reasoned in part, "[i]t would be inequitable to require [Ferguson] to complete the lengthy sentence originally imposed while the more culpable co-defendant [Kilpatrick], who initially received an even lengthier sentence, has been released." *Id.*

Having been released from prison, Ferguson finally turned his attention to this case. In February 2022—almost four years after Judge Tarnow ordered entry of a default judgment—Ferguson filed a motion to vacate and set aside the default judgment. (ECF No. 161.) That motion triggered a series of case reassignments, eventually ending with this case being recently assigned to the undersigned.

## II.

In seeking to set aside the default judgment, Ferguson primarily relies on Federal Rule of Civil Procedure 60(b)(4). (ECF No. 161, PageID.4270.) Rule 60(b)(4) states, "On motion and just terms, the court may relieve a party or its legal

9

representative from a final judgment, order, or proceeding for the following reasons . . . the judgment is void." A judgment is void if the court lacks jurisdiction over the defendant. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995). And a court lacks jurisdiction over the defendant if service was not effectuated. *See King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003), *other aspects abrogated by Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). Ferguson says that is the case here: "[I] was never personally or otherwise served a copy of the Summons and Complaint under Rule 4(e) of the Federal Rules of Civil Procedure." (ECF No. 161, PageID.4271.)

### III.

### A.

Before examining Ferguson's challenge to service, the Court briefly comments on a threshold issue—the timeliness of Ferguson's motion. In responding to Ferguson's motion to set aside the default judgment, McCormick claims that the motion comes too late. (ECF No. 163, PageID.4293.) That is a fair point given that Ferguson's motion comes almost five years after Judge Tarnow ordered that a default judgment be entered and even longer since Judge Cleland ruled service was effectuated.

Rule 60(c) provides that for motions brought pursuant to Rule 60(b)(1), (2), or (3), the motion must be filed within a year after entry of judgment; but for motions brought pursuant to (b)(4), (5), and (6), Rule 60(c) only prescribes a "reasonable

10

time." In accordance with this language, the Sixth Circuit has stated that a Rule 60(b)(4) motion must be "brought within a reasonable time." *United States v. Dailide*, 316 F.3d 611, 617–18 (6th Cir. 2003); *see also Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006).

The Court recognizes that there is authority to the contrary. For instance, the oft-cited Wright & Miller treatise states, "the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion. A void judgment cannot acquire validity because of laches on the part of the judgment debtor." Mary Kay Kane, 11 Fed. Prac. & Proc. Civ. § 2862 (3d ed.). Many of the federal appellate courts have followed this reasoning. *See Norris v. Causey*, 869 F.3d 360, 365 (5th Cir. 2017) (citing Wright & Miller); *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1130 (11th Cir. 1994) (citing Wright & Miller and noting that the First, Fifth, Seventh, Tenth, and D.C. Circuits have taken the position that "the time within which a Rule 60(b)(4) motion may be brought is not constrained by reasonableness").

But this Court is bound by Sixth Circuit authority. And "[t]he Sixth Circuit has held in various cases that periods of anywhere between three and five years between the judgment and the filing of a 60(b)(4) motion were too long to permit the filing of such a motion for relief from judgment." *Williams-El v. Bouchard*, No. 05-CV-70616, 2016 U.S. Dist. LEXIS 60735, at *4 (E.D. Mich. May 9, 2016) (citing *Dailide*, 316 F.3d at 617). Ferguson has provided no viable reason for the lengthy

11

delay in seeking relief from judgment. And, as explained below, even if his motion is timely, Ferguson has not shown that he was not served in a manner contemplated by the Federal Rules.

**B.**

In the main, Ferguson argues that the default judgment is void under Rule 60(b)(4) because the statements in the process server's affidavit are false.

To start, Ferguson contests Coykendall's statements about contacting and visiting FCI Milan. In his affidavit, Coykendall stated, "I contacted the Federal Correctional Institution located in Milan" and "I arrived at the Federal Correctional Institution located at 4004 E. Arkona, Milan." (ECF No. 28, PageID.268.) Ferguson says there are two federal facilities in Milan: FCI Milan, which is a correctional institution, and FDC Milan, which is a detention center—the two are across the street from each other. (ECF No. 161, PageID.4271, 4276.) Ferguson also says that on the date of service, he was at FDC Milan. (ECF No. 161, PageID.4271.) Further, Ferguson claims that if Coykendall had actually called FCI Milan to arrange a visit, they would have directed him to arrange a "special visit" with FDC Milan. (ECF No. 161, PageID.4276.)

Ferguson also claims that additional statements in Coykendall's affidavit are false. As noted, Ferguson believes that if Coykendall had in fact arranged a visit, it would have been a special visit. (ECF No. 161, PageID.4276.) But, says Ferguson, special visits do not happen in the way Coykendall averred. For one, when special visits are arranged, the detainee is informed of both the visitor and the reason for

12

the visit; so, says Ferguson, if Coykendall had in fact arranged a special visit, he "could have declined the visit without even coming into [contact] with Mr. Coykendall." (ECF No. 161, PageID.4277.) Ferguson also points out that Coykendall stated that he had a "brief conversation with Mr. Ferguson through a closed, glass security door." (ECF No. 28, PageID.268.) But, according to Ferguson, special visits are not behind a glass door; instead they are conducted in a contact visiting area. (ECF No. 161, PageID.4276.) As for Coykendall's assertion that he attempted to hand Ferguson service documents "through the provided mail slot in the [glass security] door," Ferguson states that those doors have no mail slots and instead have wickets that must be opened by a guard with a key. (*Id.*)

Ferguson has not shown that the key statements of Coykendall's affidavit are false.

First, none of Ferguson's statements are sworn. Ferguson has submitted no affidavit setting out the facts alleged in his motion. He has not sworn that a "special visit" was the only manner in which Coykendall could have met with him or that the way special visits are conducted differs from the meeting Coykendall described.

In contrast, Coykendall made his statements after being "first duly sworn" and the notary indicated, "[s]ubscribed and sworn to before me on this _____ date of March, 2013." (ECF No. 28, PageID.268.) (More on the "_____ date" in a moment.) Although Coykendall did not state that his statements were made "under penalty of perjury," courts have recognized that a notarized, "duly sworn" statement is comparable. *See Porter v. Quarantillo*, No. 12-CV-0590 DLI VMS, 2012 WL

13

6102875, at *5 (E.D.N.Y. Dec. 7, 2012) ("[G]iven that both affidavits were 'duly sworn' before a notary public, the Court will consider them in connection with the pending motions."); *Quiles v. Sikorsky Aircraft*, 84 F. Supp. 2d 154, 160 (D. Mass. 1999) ("While the affidavits do not explicitly say that they were signed 'under the pains and penalties of perjury,' that standard is implied in the fact that the witnesses were 'duly sworn.'"); *Chrzaszcz v. United States*, No. CR 09-1381-PHX-JAT, 2015 WL 2193713, at *7 (D. Ariz. May 11, 2015) (similar); *Lambert v. First Fed. Mortg.*, 47 F. Supp. 3d 1310, 1313 (N.D. Ala. 2014) (similar); *Lakeview Outlets, Inc. v. Uram*, No. 95-0136, 1996 WL 571520, at *2 (N.D.N.Y. Oct. 2, 1996) (similar). The Court recognizes that *Team Kasa v. Humphrey* is to the contrary, but having reviewed the cases the *Team Kasa* court relied upon, it appears that the use of "duly sworn" was not the sole reason that the affidavits were not credited. *See* No. CV171074JSAKT, 2018 WL 1867117, at *4 (E.D.N.Y. Jan. 24, 2018) (citing cases).

Ferguson points out that the notary did not include the date of notarization (i.e., "this \_\_\_\_\_ date of March, 2013"). But he cites no law indicating that a notarization is invalid absent the notary dating the document. *Cf. Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (noting that "courts have held that the absence of a date" on a statement with § 1746's penalty-of-perjury language "does not render [it] invalid if extrinsic evidence could demonstrate the period when the document was signed"). The affidavit bears the notary's signature, her stamp, her commission expiration date, and the date of Coykendall's signature (March 19,

14

2013). It was also docketed shortly after Coykendall signed it. In other words, it appears legitimate.

In short, on one side of the scale there are contemporaneous, sworn statements, and on the other side of the scale, unsworn statements made many years later. The direction that the scale tips is obvious. *Cf. Pollock v. Pollock*, 154 F.3d 601, 612 (6th Cir. 1998) ("An unsworn affidavit cannot be used to support or oppose a motion for summary judgment."); *Tate v. Riegert*, 380 F. App'x 550, 552 (7th Cir. 2010) ("Tate's unsworn letter was entitled to no weight as substantive evidence.").

And even supposing that Ferguson's unsworn statements were entitled to the same weight as Coykendall's sworn statements, Ferguson's account is not very convincing. Many of Ferguson's attacks on Coykendall's affidavit are to this effect: "if the proper policy or practice had been followed, then the events would not have occurred as Coykendall says they did." Noticeably absent is any direct statement by Ferguson that he never met Coykendall in March 2013. True, Ferguson does say that he "did not verbally or otherwise communicat[e] with Mr. Coykendall" but that sentence is completed by "as he was housed at FDC Milan, not FCI Milan, the facility Mr. Coykendall refers to in his affidavit." (ECF No. 161, PageID.4271.) Arguably, this too is merely an indirect denial of Coykendall's statements, i.e., "Coykendall says he went to FCI Milan, so I could not have spoken with him because I was at FDC Milan." That is much less convincing than directly stating, "I have never met Coykendall."

15

In short, on the record as it stands now, Ferguson has not persuaded the Court that the key facts in Coykendall's affidavit are false. *Cf. O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) ("A signed return of service constitutes prima facie evidence of valid service."). And if the facts are as Coykendall has stated them, then the Court sees no reason to revisit Judge Cleland's order. After all, Judge Cleland relied on Coykendall's affidavit as part of the factual basis for finding that Ferguson was served. (*See* ECF No. 90, PageID.3307.) And Ferguson has identified no erroneous law in Judge Cleland's opinion. *See Sparton Engineered Prod., Inc. v. Cable Control Techs., Inc.*, 178 F.3d 1296 (Table), 1999 WL 115472, at *2 & n.6 (6th Cir. 1999) (noting that district court had stated that "one cannot avoid service by refusing physically to accept the summons" and agreeing "with the district court that by refusing the . . . service of process, Cable acted at its own peril"); *Novak v. World Bank*, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983) ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person.").

## C.

Ferguson makes three other points worth expressly addressing.

### 1.

For one, Ferguson relies on two of the *United Coin* factors in an effort to set aside the default judgment. In the Sixth Circuit, courts apply the three factors set out in *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839 (6th Cir.

1983), in deciding whether to set aside a clerk's entry of default under Rule 55(c). These factors are (1) "[w]hether culpable conduct of the defendant led to the default," (2) "whether the defendant has a meritorious defense," and (3) "whether the plaintiff will be prejudiced." *United Coin*, 705 F.2d at 845. Although applied more stringently once a default ripens into a default judgment, the *United Coin* factors also apply to Rule 60(b) motions to set aside a default judgment. *See id.* ("[T]he three factors which control the decision of a Rule 55(c) motion to set aside entry of default also apply to a Rule 60(b) motion to set aside entry of a judgment by default."). Here, Ferguson argues that McCormick will not suffer prejudice if the default judgment is set aside. He also asserts that he has a meritorious defense to McCormick's claims.

Although the *United Coin* factors apply to Rule 60(b) motions, the Court believes that when, as here, a defendant relies on Rule 60(b)(4) but fails to show that "judgment is void" because service was not effectuated, the other *United Coin* factors need not be addressed. *See* Mary Kay Kane, 11 Fed. Prac. & Proc. Civ. § 2862 (3d ed.) ("[A] motion under [(b)(4)] differs markedly from motions under the other clauses of Rule 60(b).").

To start, Rule 60(b)(4) asks the Court to decide a yes-or-no question: is the judgment void? As the Wright & Miller treatise explains, "There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4). Nor is there any requirement, as there usually is when default judgments are attacked under Rule 60(b), that the moving party show a meritorious defense. Either a

17

judgment is void or it is valid." Mary Kay Kane, 11 Fed. Prac. & Proc. Civ. § 2862 (3d ed.); *see also Shank/Balfour Beatty v. Int'l Bhd. Of Elec. Workers Loc. 99*, 497 F.3d 83, 94 (1st Cir. 2007) ("[A] district court has no discretion when deciding a motion brought under Rule 60(b)(4) because a judgment is either void or it is not."). Indeed, where a defendant is successful in showing that "the judgment is void," there is no need to consider the other two *United Coin* factors. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995).

And at least in the context of a Rule 60(b)(1) motion, the reverse is also true. The Sixth Circuit has explained, "because [Rule 60(b)(1)] *mandates* that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect," "it is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two [*United Coin*] factors." *Waifersong*, 976 F.2d at 292 (emphasis added); *accord Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003); *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002).

All that rings true for Rule 60(b)(4) too. If the idea is that when a defendant fails to satisfy Rule 60(b)(1)'s "mandate[]," *Waifersong*, 976 F.2d at 292, the other two *United Coin* factors need not be addressed, then the same can be said of a defendant's failure to satisfy Rule 60(b)(4)'s mandate. Or perhaps the idea is that when a defendant fails to show "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1), an inference arises that he is culpable for the default judgment and the other two *United Coin* factors cannot carry the day. The same can

be said on the facts of this case. By failing to show that service was improper, the implication is that Ferguson was served, and so it is fair to say that Ferguson is culpable for the default judgment such that the other two *United Coin* factors cannot carry the day.

In short, because Ferguson has failed to show that the "judgment is void," the Court declines to analyze whether McCormick would be prejudiced if the default judgment were set aside or if Ferguson has a meritorious defense to McCormick's claims. *See Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996) (indicating that to prevail on a Rule 60(b) motion, a defendant must show "that one of the specific requirements of Rule 60(b) is met").

### 2.

Ferguson also points out that when McCormick mailed him court documents in this case, they were returned undeliverable. Thus, Ferguson implies that when McCormick mailed court documents, it knew he was not at the addressed location. (ECF No. 161, PageID.4278.) Ferguson also points out that McCormick had his prison registration number. (ECF No. 161, PageID.4272.) The implication, apparently, is that McCormick should have looked up his actual location instead of continuing to send documents to FCI Milan.

These arguments do not justify setting aside the default judgment. As an initial matter, not all the filings that McCormick mailed were returned, nor were they all returned as undeliverable. When McCormick sent the entry of default, its motion for default judgment, and the notice of the hearing on the motion to

19

Ferguson at the Wayne County Jail, it was returned "Refused." (ECF No. 121, PageID.3756.) That suggests that Ferguson was at the jail when McCormick's mailing arrived and refused it. But even if Ferguson is correct that McCormick knew it was sending documents to the wrong location, once service was effectuated, it was Ferguson's responsibility to appear in this lawsuit and defend it. *See* Fed. R. Civ. P. 55; E.D. Mich. LR 11.2 (2009). Ferguson cites no legal authority requiring McCormick to track his whereabouts after it effectuated service.

### 3.

Ferguson states that he "has also satisfied the [*United Coin*] factors for equitable relief under . . . Rule 60(b)(1) and (3)."

But a motion pursuant to Rule 60(b)(1) or (3) must be brought within a year of "the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Judge Tarnow ordered that a default judgment be entered against Ferguson almost four years before Ferguson moved to set it aside, making relief under Rule 60(b)(1) or (b)(3) untimely.

### IV.

For the reasons given, Ferguson's motion to vacate and set aside the default judgment (ECF No. 161) is DENIED.

SO ORDERED.

Dated: September 8, 2022

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE

20